**UNITED STATES of America, Plaintiff,**

v.

**Elmo TURNER, Ronald Stiff, a/k/a Ronald Mumphord, Arzell Gulley, Defendants.**

**No. 93–CR–80981–DT.**

United States District Court, E.D. Michigan, Southern Division.

Aug. 18, 1994.

Mark Edelman, Asst. U.S. Atty., Detroit, MI, for plaintiff.

Paul McKenna, Coconut Grove, FL, John McCloskey, Farmington Hills, MI, David Steingold, Detroit, MI, for defendants.

## OPINION AND ORDER REGARDING DEFENDANT TURNER'S MOTION FOR SEVERANCE

ROSEN, District Judge.

### I. INTRODUCTION

On September 30, 1993, a federal grand jury issued a thirteen-count indictment against the above Defendants. Count I alleges that Defendants engaged in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. Said conspiracy allegedly occurred between September 12 and September 22, 1993. Counts II–IV allege that Defendants aided and abetted one another in the possession with intent to distribute of cocaine base ("crack"), heroin, and cocaine in violation of 21 U.S.C. § 841(a)(1). Counts V–VII allege various firearms violations by Defendant Elmo Turner. Counts IX and X allege firearms violations by Defendant Arzell Gulley. Counts XI and XII allege various firearms violations against Defendant Ronald Stiff. Finally, Count XII alleges a firearms violation against both Turner and Gulley. All of the non-conspiracy counts focus on events taking place on September 22, 1993.

On that date, police officers of the Wayne County Sheriff's Department and at least one agent of the Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, broke into a home on 19438 Stahelin Street, Detroit, Michigan. Once inside, the officers conducted a search pursuant to a valid search warrant. At the Stahelin residence, the officers seized all three Defendants, as well as Defendant Stiff's two young daughters. The officers also found heroin, crack cocaine, and powder cocaine in significant quantities, as well as several firearms, accompanying ammunition, and drug paraphernalia.

On July 25, 1994, Defendant Turner moved for severance. The grounds for his motion are stated as follows:

> Undersigned counsel has been advised by counsel for Co–Defendant Gulley that his defense is going to be antagonistic to that of Defendant Turner's. More specifically, Co–Defendant Gulley will be asserting a defense of mere presence in a residence which he did not own, lease or reside in, and essentially point the finger at Defendant Turner as being the owner/resident, and therefore the one responsible for the guns and drugs seized from the premises. Consequently, this defense strategy creates an antagonistic and irreconcilable defense which would unfairly prejudice Defendant Turner's right to a fair trial.
>
> Essentially, Co–Defendant Gulley's defense will be to claim innocence and blame the contraband and firearms on Defendant Turner, thereby creating irreconcilable and antagonistic defenses. Consequently, based on these representations by counsel for Co–Defendant Gulley, this motion follows, in order to preserve Defendant Turner's right to a fair trial by virtue of severance from his Co–Defendants.

Defendants Stiff and Gulley have both joined in Turner's motion for severance.

The Government responded to this motion on July 29. After reviewing the pleadings of the parties, and after hearing oral argument

on this matter on August 11, the Court is prepared to rule on Turner's motion for severance. This memorandum opinion and order sets forth that ruling.

## II. *DISCUSSION*

The U.S. Supreme Court recently articulated the standards which should govern a motion for severance in *Zafiro v. United States*, ——— U.S. ———, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). The facts in *Zafiro* were these: defendants Garcia and Soto, who were under police surveillance, took a box from Soto's bungalow in Chicago, Illinois and loaded it into Soto's car. They then drove to Zafiro's apartment in Cicero, Illinois, followed by undercover police. As Garcia and Soto were carrying the box up to the apartment, the police identified themselves. Garcia and Soto dropped the box and ran into Zafiro's apartment. The police pursued them into the apartment, and they arrested Garcia, Soto, Zafiro and a fourth defendant, Martinez. The box was found to contain 55 pounds of cocaine. A lawful search of the apartment also revealed 16 more pounds of cocaine, 25 grams of heroin and 4 pounds of marijuana, all in a suitcase in Zafiro's apartment. A sack of some $23,000 in cash was next to the suitcase. Finally, an additional seven pounds of cocaine was found in a car parked in Soto's garage. ——— U.S. at ———, 113 S.Ct. at 936.

All four defendants were convicted of conspiring to possess cocaine, heroin, and marijuana. Garcia and Soto were also convicted of possession of cocaine, and Martinez was convicted of possession of cocaine, heroin and marijuana. ——— U.S. at ——— ——— ———, 113 S.Ct. at 936–37.

Before their trial, all four defendants moved for severance of their trials on the ground that their defenses were mutually antagonistic. Zafiro contended that she was merely Martinez's girlfriend, and that she had no knowledge of his involvement with drugs or of the drugs in the suitcase in her closet. Martinez countered that he was only visiting Zafiro at the time of the bust, and that he had no idea of her involvement with drugs. Similarly, Garcia and Soto both sought to point the finger at each other.

Soto claimed that Garcia told him he needed a box, which Soto provided; otherwise, he had no knowledge of drug activity. Garcia argued that he was innocent; the box was Soto's and Garcia had no idea of its contents. ——— U.S. at ———, 113 S.Ct. at 936.

The trial court denied all four motions, and Garcia, Soto and Martinez appealed. The Seventh Circuit affirmed the trial court, and the Supreme Court, in turn, affirmed the Seventh Circuit.

The Supreme Court began its analysis by citing Fed.R.Crim.P. 14:

> If it appears that a defendant ... is prejudiced by a joinder ... of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The Supreme Court then stated:

> In interpreting Rule 14, the Courts of Appeals frequently have expressed the view that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to mandate severance. * * * Notwithstanding such assertions, the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. * * * The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses.

> Nevertheless, petitioners urge us to adopt a bright-line rule, mandating severance whenever co-defendants have conflicting defenses.... We decline to do so. Mutually antagonistic defenses are not prejudicial *per se*. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. * * *

> We believe that, when defendants have properly been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable

judgment about guilt or innocence. Such a risk might occur when evidence that a jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant. For example, evidence of a co-defendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.... Evidence that is probative of a defendant's guilt but technically admissible only against a co-defendant also might present a risk of prejudice.... Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.... The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh,* less drastic measures, such as limiting instructions often will suffice to cure any risk of prejudice. 481 U.S. [200, 211], 107 S.Ct. [1702, 1709, 95 L.Ed.2d 176 (1987)].

—— U.S. at ——– ——, 113 S.Ct. at 937–38 (most citations omitted).

The Supreme Court then applied this analysis to the facts of *Zafiro:*

Turning to the facts of this case, we note that petitioners do not articulate any specific instances of prejudice. Instead, they contend that the very nature of their defenses, without more, prejudiced them. Their theory is that when two defendants both claim they are innocent and each accuses the other of a crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt.

As to the first contention, it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. * * * Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of defendants to a fair trial." ... While "[a]n important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence," ... (emphasis added), a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former co-defendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a co-defendant.

As to the second contention, the short answer is that petitioners' scenario simply did not occur here. The Government argued that all four petitioners were guilty and offered sufficient evidence as to all four petitioners; the jury in turn found all four petitioners guilty of various offenses. Moreover, even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and "juries are presumed to follow their instructions." ... The District Court properly instructed the jury that the Government had "the burden of proving beyond a reasonable doubt" that each defendant committed the crimes with which he or she was charged.... The court then instructed the jury that it must "give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or her." ... In addition, the District Court admonished the jury that opening and closing arguments are not evidence and that it should draw no inference from a defendant's exercise of the right to silence.... These instructions cured any possibility of prejudice.

—— U.S. at ——– ——, 113 S.Ct. at 938–39 (citations omitted).

The Supreme Court concluded, finally, with these words:

> Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts. Because petitioners have not shown that their joint trial subjected them to any legally cognizable prejudice, we conclude that the District Court did not abuse its discretion in denying petitioner's motion to sever.

— U.S. at ——, 113 S.Ct. at 939.

■ *Zafiro* favors the denial of Turner's severance motion. The defendants in that case, like Turner here, rested their motions for severance largely on the simple assertion that the presence of antagonistic defenses in a single trial is alone sufficiently prejudicial to warrant separate trials. The Supreme Court quickly rejected that notion, and it held that a motion for severance can be denied unless a defendant demonstrates that there is a substantial likelihood that one of his specific constitutional trial rights will be prejudiced by a joint trial or that the jury will be unable to reach a reliable verdict.

With respect to the reliability of any jury verdict, the Court is convinced that proper instructions, such as those given by the district court in *Zafiro*, should cure any general tendency to mislead the jury that the alleged conflicting defenses may present. Similarly, the Court sees no specific, constitutional trial right in danger of being denied to Defendants by virtue of a joint trial.

Turning now to the question of whether a specific constitutional trial right is insufficiently protected by a joint trial, at the hearing on this motion Turner suggested to the Court that his Fifth Amendment right not to incriminate himself would be at risk. Turner's argument is this: if Gulley takes the stand and points the finger at Turner, then Turner will have no choice but to testify himself to refute Gulley's accusations. Defendant Gulley also argued to the Court at the hearing that it would be unfair to have his client, or any of the Defendants, not only face prosecution from the Government, but also from a Co–Defendant.[1]

■ The Court finds neither argument persuasive. With regard to the Fifth Amendment argument, if Turner believes that he must take the stand to defend accusations by one or both of his Co–Defendants, so be it. This situation is no different than if he were confronted with substantial physical evidence against him, and he believed that the only chance he had for an acquittal was to take the stand and explain himself. In other words, Turner's decision to take the stand or not is just that: his decision based on what he thinks will be the best trial strategy.

Importantly, the facts of this case are significantly different from those found in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In that decision, the U.S. Supreme Court confronted a scenario in which one criminal defendant (Bruton) was unable to cross-examine his co-defendant (Evans) on a confession implicating them both that Evans had made to a government agent. Evans never took the stand, and, although the district court instructed the jury that the confession could only be used against Evans, both defendants were convicted. The court of appeals affirmed Bruton's conviction. 391 U.S. at 123–24, 88 S.Ct. at 1621–22.

The U.S. Supreme Court reversed. Its ruling hinged upon the fact that Bruton's Sixth Amendment right to confront witnesses hostile to his case was impeded because a damning statement made by Evans was admitted into evidence and because Bruton did not have an opportunity to cross-examine him. Moreover, the Supreme Court did not

---

[1] Defendants also urged this Court to grant a severance because evidence that would be inadmissible in separate trials might come in at a joint trial. More specifically, Defendants indicated that if Defendant X pointed the finger at Defendant Y, then Defendant Y would seek to introduce prior bad acts committed by Defendant X and not known by the Government in order to undermine Defendant X's adverse testimony.

The Court believes that the best way to handle any such evidentiary problems is to rule upon them as they come up in trial. *See* Fed.Rs.Evid. 404(b), 608 & 609. The Court also does not see how the introduction of such evidence would violate a specific constitutional trial right of a Defendant or that it would mislead a properly instructed jury on the guilt or innocence of the Defendants.

believe that instructions given by the district court on the limited permissible use of the statement would adequately cure the prejudice posed by the statement in the context of a joint trial. 391 U.S. at 136, 88 S.Ct. at 1628.

Here, the situation is entirely different. If one of Turner's Co–Defendants takes the stand to point the finger at Turner, he can effectively rebut any allegations made by that Co–Defendant through cross-examining him. Whether or not Turner takes the stand is not mandated by these circumstances in the same way it would be in a *Bruton*-esque case, when, perhaps, Turner's only means of rebutting a damning statement by a Co–Defendant would be to testify himself.

The Court also does not think that Defendant Gulley's argument for severance has any merit. Although it may be true that the Defendants in this case will have to defend against the charges of Co–Defendants as well as the Government, that result is dictated not by any constitutional violations by the Government or the failure to enforce constitutional rights by this Court. Rather, it is the natural outcome of the admittedly strong evidence against the Defendants and the defense strategies chosen by them.

Further precedential support for the denial of Turner's motion can be found in the pre-*Zafiro* case of *United States v. Horton*, 847 F.2d 313 (6th Cir.1988). In that case, one of two defendants (Horton) charged with wire fraud appealed his conviction. Horton and co-defendant Bandawat set up a scheme whereby Horton, a purchasing agent for Chrysler, gave Bandawat Chrysler business in return for a 5% kickback on sales. Unable to make money on the deal, Bandawat began to short-ship Chrysler. This short-shipping cost Chrysler some $500,000. 847 F.2d at 314–16.

Horton claimed that he had no knowledge of the short-shipments or that his relationship with Bandawat injured Chrysler. Bandawat argued that he acted under economic duress imposed by Horton's control over important business opportunities. 847 F.2d at 316.

Before trial, Horton moved for a severance on the ground that his defense was "fundamentally antagonistic" to Bandawat's. The district court denied the motion, and on appeal the Sixth Circuit affirmed with the following analysis:

> The law in this circuit is clear that a defendant seeking to overturn a trial court's decision not to sever the trials of co-defendants who allegedly participated in the same offense bears a heavy burden.... The district court's decision to deny severance "will be overruled on appeal only for a clear abuse of discretion." ... A defendant must make a strong and compelling showing of prejudice before reversal will be granted. * * * There is a strong policy in favor of joint trials when charges will be proved by the same series of acts ..., and there is a presumption that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly....
>
> Separate trials are not mandated merely because one defendant claims that he and a co-defendant will present antagonistic defenses. "Different defenses by co-defendants do not require a severance of their trials. To prevail [on a motion for severance], the defendants must show that 'antagonism between co-defendants will mislead or confuse the jury.'" * * * The mere fact that each defendant "points the finger" at another is insufficient; the defendant must show that the antagonism confused the jury.... As no such showing has been made in the present case, we conclude that the district court did not abuse its discretion in refusing to grant defendant Horton's motion for a severance.

847 F.2d at 317 (citations omitted).

Applying *Horton* to this case, Turner has not shown how the jury will be confused by the alleged conflicting defenses so long as the jury is properly instructed (1) that the potential guilt of one Defendant does not mandate the guilt of other Defendants, (2) that guilt is individual, and (3) that the jury must find each Defendant guilty or innocent beyond a reasonable doubt on the evidence presented as to each Defendant. Indeed, Turner has not even presented how Gulley's defense—

that he had no ties to the house where the Defendants, drugs and guns were found—is necessarily antagonistic to Turner's as yet unidentified defense. Such an assertion of prejudice, without more, is not grounds under *Zafiro* or *Horton* for severance.

### III. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Turner's motion for severance is DENIED. A joint trial of all three Defendants shall proceed forthwith.[2]

---

2. On request of counsel, the Court has considered the possibility of impaneling a separate jury for each Defendant. This is a matter for the sound discretion of the Court. *See* Fed. R.Crim.P. 14. *See also United States v. Feldman,* 606 F.2d 673, 675 n. 1 (6th Cir.1979) (noting that the district court impaneled two separate juries for a multi-defendant case), *cert. denied sub nom. Zalmanowski v. United States,* 445 U.S. 961, 100 S.Ct. 1648, 64 L.Ed.2d 236 (1980). In the exercise of its discretion, the Court sees no need for multiple juries. As noted in the text above, the Court believes that curative instructions on individual guilt or innocence will satisfy Defendants' fair trial rights.