UNITED STATES COURT OF APPEALS
**Filed 6/28/96**
FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TONY ACEVEDO GUTIERREZ,

Defendant-Appellant.

No. 95-6013
(D.C. No. CR-94-136-C)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before ANDERSON, LOGAN, and MURPHY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant Tony Gutierrez appeals from his convictions arising out of his participation in a conspiracy to possess and distribute methamphetamine. Mr. Gutierrez presents numerous allegations of error at the trial and at sentencing. For the reasons that follow, we affirm.

The government's case at trial revolved around the sale of methamphetamine by Mr. Gutierrez and a co-defendant to several different buyers. The government presented testimony from several individuals that they had bought methamphetamine at various times from either Mr. Gutierrez or the co-defendant. The evidence also indicated that Mr. Gutierrez acted as a supplier of methamphetamine for the co-defendant. Mr. Gutierrez was charged with one count of conspiracy, pursuant to 21 U.S.C. § 846, and six counts of Travel Act violations, pursuant to 18 U.S.C. §§ 2 and 1952(a)(3). Mr. Gutierrez was also charged with two counts of using a telephone to facilitate a drug offense, pursuant to 21 U.S.C. § 843(b) and 18 U.S.C. § 2, one money laundering count, pursuant to 18 U.S.C. §§ 2 and 1956(a)(3)(A), one other Travel Act count, pursuant to 18 U.S.C. §§ 2 and 1952 (a)(3), and one count of possession with intent to distribute methamphetamine, pursuant to 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. After a joint jury trial, Mr. Gutierrez and his co-defendant were found guilty on all counts.

Mr. Gutierrez now raises seven issues on appeal: 1) whether the government violated Brady v. Maryland, 373 U.S. 83 (1963), when it failed to turn over the photographs used in a photo lineup for identification purposes; 2) whether the in-court identification of Mr. Gutierrez by a government witness should have been suppressed due to an unduly suggestive photo lineup; 3) whether Mr. Gutierrez's motion for severance should have been granted; 4) whether Mr. Gutierrez's Sixth Amendment right of confrontation was denied when the district court allowed a government witness to invoke his Fifth Amendment right against self-incrimination; 5) whether the evidence was sufficient to convict Mr. Gutierrez on all counts; 6) whether the court incorrectly determined Mr. Gutierrez's base offense level at sentencing; and 7) whether the court incorrectly enhanced Mr. Gutierrez's sentence for possession of a firearm.

I.      Government's Failure to Turn Over Photos Used in Photo Lineup

The government intended to rely at trial on the testimony of Debra Wensel and Royce England. Ms. Wensel and Mr. England had been involved in drug transactions with both Mr. Gutierrez and the co-defendant. In preparing its case, the government showed Ms. Wensel and Mr. England a photo array with the hope that the witnesses could identify Mr. Gutierrez. Ms. Wensel, however, could not identify Mr. Gutierrez. Although defense counsel repeatedly requested to see the photographs, the government delayed and finally admitted that it had lost the original photos. It did provide Mr. Gutierrez with photocopies

3

of the photographs. Before trial, the trial court viewed the photocopies of the photo array and ruled that the photographs were impermissibly suggestive. The court based its ruling on the fact that the photo array contained three photos: one of a woman, one of Mr. Gutierrez who is Hispanic, and one of another man who appeared to be non-Hispanic. The court did not allow Ms. Wensel to identify Mr. Gutierrez in court, but did allow her to testify about her involvement in the relevant drug transactions.

Mr. Gutierrez argues that the original photographs, rather than the photocopies, amounted to Brady material and should have been turned over. Mr. Gutierrez argues that they were exculpatory in nature because Ms. Wensel could not identify the defendant even though the photographs were clearly impermissibly suggestive. He further argues that the photocopies were insufficient because they were not high quality reproductions and thus the jury would not have been able to appreciate the exculpatory nature of Ms. Wensel's inability to identify the defendant. Finally, Mr. Gutierrez argues that all of Ms. Wensel's testimony should have been stricken in order to remedy the alleged Brady violation.

In order to establish a Brady violation, a defendant must show that the suppressed evidence was both exculpatory and material. Brady, 373 U.S. at 87. Assuming that the original photographs were indeed exculpatory, Mr. Gutierrez fails to establish that they were material. Materiality is established if there is a reasonable probability that the result of the proceeding would have been different had the evidence been turned over to the defense. Smith v. Secretary of New Mexico Dep't of Corrections, 50 F.3d 801, 827 (10th Cir.), cert.

4

denied, 116 S. Ct. 272 (1995). Mr. Gutierrez argues that the original photographs were needed because of the poor quality of the photocopies. This argument is belied by the fact that the trial court was able to use the photocopies to rule that the array was unduly suggestive. The court did so without encountering any problems with the quality of the photocopies. It is doubtful that the jury would have been misled by the photocopies when the judge himself had no problem with their quality. Thus, the failure of the government to turn over the original photographs, rather than their photocopies would not have changed the result in the proceedings and therefore the original photographs were not material evidence. No Brady violation occurred.

II.     In-Court Identification of Mr. Gutierrez by Royce England

Mr. England was also shown the photographic lineup discussed above and was able to identify Mr. Gutierrez. Although the court ruled that the photo lineup was impermissibly suggestive, the court allowed Mr. England to identify Mr. Gutierrez in court because it believed that the identification was otherwise sufficiently reliable. Mr. Gutierrez argues that the photo lineup tainted Mr. England's identification and that the identification was not otherwise reliable.

Despite an impermissibly suggestive photo lineup, the court may still allow an in-court identification if the witness's testimony is otherwise reliable given the totality of the

5

circumstances. <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1490 (10th Cir. 1993). In making this determination, the court should consider the following factors:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

<u>Id.</u> (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972)). Here, Mr. England had accurately described Mr. Gutierrez and had also testified that he had met Mr. Gutierrez on several occasions in good lighting conditions. Mr. England expressed certainty in his identification. Given these circumstances, the district court did not err when it allowed Mr. England to identify Mr. Gutierrez.

III.    Motion for Severance

Mr. Gutierrez next argues that the court improperly denied his severance motion. In order to prevail on such a claim, the defendant must make a strong showing of prejudice. <u>United States v. Williams</u>, 45 F.3d 1481, 1483 (10th Cir. 1995). Such prejudice exists where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993); <u>Williams</u>, 45 F.3d at 1484. Mr. Gutierrez argues that he suffered prejudice because the defense theories in this case were irreconcilable and that the jury could not adequately keep separate evidence which related to only one defendant.

After reviewing the record, we conclude that Mr. Gutierrez has not met his heavy burden of showing prejudice in this case. The Supreme Court has stated that "[m]utually antagonistic defenses are not prejudicial per se." Zafiro, 506 U.S. at 538. Here, the co-defendant's defense consisted of the theory that he had not participated in any drug deals. The jury could believe this and still convict Mr. Gutierrez. Thus, the defenses were not irreconcilable. Mr. Gutierrez also points to the fact that co-defendant's counsel referred to him during closing argument as "Tony, the dealer." This, however, does not change the result. The mere fact that one defendant seeks to cast blame on the other does not create prejudice. United States v. Linn, 31 F.3d 987, 992 (10th Cir. 1994) (finding that alleged mutually antagonistic defenses were nothing more than finger-pointing); United States v. Smith, 788 F.2d 663, 668 (10th Cir. 1986). Even if prejudice is shown, severance may not be required. Zafiro, 506 U.S. at 538-39. For example, the district court may choose to mitigate any prejudice by providing the jury with limiting instructions. Id. Here, the court limited any potential prejudice by instructing the jury that statements in closing argument are not evidence and that the jury should only consider evidence against the defendant to whom it related. Finally, we do not believe that the case was so complicated or intricate that the jury was incapable of sorting through the evidence in an appropriate manner. Thus, the court did not err in refusing to grant severance in this case.

IV.     Sixth Amendment Right of Confrontation

Mr. Gutierrez next argues that the court violated his Sixth Amendment right to confront witnesses when the court allowed a government witness to assert his Fifth Amendment right against self-incrimination. On cross-examination of the government's witness Royce England, Mr. Gutierrez's counsel attempted to elicit from Mr. England that he had retaliated against an individual, Laura Mulligan, because he believed that she had been a government informant against him. The exchange went as follows:

Q: Is that why that on May 1st, 1994 you set fire to Laura Mulligan's U-Haul truck?

A: No, sir.

Q: Did you do that on May 1st, 1994? Did you go out on Meridian where Laura Mulligan had her truck parked and had a lady named Janice Wilson with her and you set fire to her truck?

A: I can't remember--

MS. TAYLOR: Objection, Your Honor. May we approach?

Gutierrez R., Vol. VII at 147-48. The prosecutor then informed the court that Mr. England had arson charges pending against him in state court. The court questioned the witness and determined that Mr. England did not know of the pending state charges and that he had no counsel for the arson charges. Additionally, Mr. England's current attorney was not present. After being advised of his Fifth Amendment rights, Mr. England declined to answer any further questions relating to the alleged arson. Mr. Gutierrez now contends that Mr. England waived his Fifth Amendment right to remain silent when he answered the first question about the fire incident. He then argues that because Mr. England should not have been allowed to

8

exercise his Fifth Amendment rights, Mr. Gutierrez's Sixth Amendment right to confront witnesses was violated.

In order to determine whether Mr. Gutierrez waived his Fifth Amendment right against self-incrimination we must look to the totality of the circumstances in order to determine whether he intentionally and knowingly abandoned his rights. Fernandez v. Rodriguez, 761 F.2d 558, 562 (10th Cir. 1985). Given the circumstances of this case, we cannot conclude that Mr. England knowingly waived his right against self-incrimination. He was unaware of pending charges against him, and his current attorney was not present. Additionally, Mr. England's "no" answer to a leading question followed by his answer "I can't remember" simply do not indicate an intent to waive his Fifth Amendment rights or, for that matter, an intent to begin testifying about the fire incident. Rather, this exchange indicates his hesitance to testify about the matter. Finally, Mr. Gutierrez claims that Mr. England waived his Fifth Amendment rights by pleading guilty to conspiracy to distribute methamphetamine. A guilty plea, however, is not a waiver of Fifth Amendment rights as to statements that might expose a defendant to further criminal liability. United States v. Garcia, 78 F.3d 1457, 1463 (10th Cir.), cert. denied, 116 S. Ct. 1888 (1996). Thus, the court properly allowed Mr. England to assert his Fifth Amendment right against self-incrimination.

Contrary to Mr. Gutierrez's argument, this limitation on Mr. England's testimony did not violate his Sixth Amendment right to confront and cross-examine witnesses. In some cases the Sixth Amendment does require that the testimony of a witness who asserts the Fifth

9

Amendment be stricken in order to preserve a defendant's right to cross-examine and confront witnesses. This rule does not apply, however, where the defendant is merely "precluded from inquiring into collateral matters bearing only on the credibility of the witness . . . ." United States v. Nunez, 668 F.2d 1116, 1122 (10th Cir. 1981). It appears that the main purpose of this line of questioning was to attack the credibility of Mr. England. Mr. Gutierrez argues, however, that the questioning went not only to credibility but also to the nature and conduct of the conspiracy. We find it hard to adopt this argument, given the fact that the alleged arson incident in this case was at best tangentially related to the carrying on of a conspiracy to possess and distribute methamphetamine. In any event, defense counsel was still able to cross-examine Mr. England regarding his drug use, his cooperation with the government and the discrepancies in his testimony. We conclude that Mr. Gutierrez's Sixth Amendment rights were not violated.

V.      Sufficiency of the Evidence

Mr. Gutierrez next argues that the evidence was insufficient to convict on any of the charges. In reviewing a sufficiency of the evidence claim, we consider the evidence in the light most favorable to the government. United States v. Davis, 965 F.2d 804, 811 (10th Cir. 1992), cert. denied, 507 U.S. 910 (1993). We may not "weigh conflicting evidence or consider witness credibility as that duty is exclusively delegated to the jury." Id. Although this rule is well-established, Mr. Gutierrez asks us to re-examine it based on the evidence in

10

this case. For example, Mr. Gutierrez argues that his work records, presented at trial, indicated that he could not have been present at the drug deals he was convicted of. In effect, Mr. Gutierrez argues that the evidence was insufficient to convict because the jury should have resolved factual conflicts in his favor. We see no reason in this case to usurp the role of the jury. Rather, we simply note that the jury could and did reasonably resolve any factual conflicts against Mr. Gutierrez. In general, the record is replete with testimony of Mr. Gutierrez's direct involvement with several drug transactions. Thus, we conclude that sufficient evidence supported Mr. Gutierrez's conviction on all counts.[1]

VI. Determination of Base Offense Level at Sentencing

Mr. Gutierrez next challenges the district court's determination of his base offense levels at sentencing. He argues that the court incorrectly calculated the amount of drugs involved in the conspiracy. At sentencing, the government bears the burden of proving drug quantity by a preponderance of the evidence. United States v. Chatman, 994 F.2d 1510, 1516 (10th Cir.), cert. denied, 114 S. Ct. 230 (1993). We review the district court's factual findings for clear error. Id.

---

[1] Mr. Gutierrez also argues that insufficient evidence supports his conviction for money laundering pursuant to 18 U.S.C. § 1956(a)(3). He cites to United States v. Johnson, 971 F.2d 562 (10th Cir. 1992), which construed the term "criminally derived property" as used in 18 U.S.C. § 1957. Because this cite is inapposite, it is difficult to discern what counsel is attempting to argue. In any event, the evidence showed that Mr. Gutierrez received $2,500 via wire transfer as part of a sale of methamphetamine. This evidence supports a conviction under § 1956(a)(3).

Mr. Gutierrez's arguments amount to nothing more than a rehashing of his sufficiency of the evidence claim. He asserts that the district court relied on trial testimony which was either uncorroborated, unreliable or in conflict. He does not directly attack the amount of drugs involved in various transactions, rather he asserts that the drug transactions in question did not occur at all. We have already held that the evidence presented at trial was sufficient for the jury to convict beyond a reasonable doubt. A fortiori, the court did not err when it concluded that the same evidence was established by a preponderance of the evidence. The court did not err in determining the amount of drugs involved for sentencing purposes.

VII. Sentence Enhancement for Possession of a Firearm

Finally, Mr Gutierrez argues that the district court improperly enhanced his sentence pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm. Under § 2D1.1(b)(1), the government bears the initial burden of establishing the temporal and spatial proximity of the firearm to the defendant and the drug-trafficking activity. United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993). This may be done by presenting evidence that the firearm was in the same general location "'where drugs or drug paraphernalia are stored or where part of the transaction occurred.'" Id. (citation omitted). Once the government meets this burden, the burden shifts to the defendant to show that it is "clearly improbable" that the firearm was related to the drug transaction. United States v. Contreras, 59 F.3d 1038, 1040 (10th Cir. 1995).

Mr. Gutierrez claims that no evidence supported the physical proximity of a firearm to any drug activity. The evidence is to the contrary. A loaded 9mm handgun was found in his kitchen two feet from a digital scale. His residence also contained baggies, mobile phones, pagers, and more than $2,000 in cash. Furthermore, testimony at trial indicated that some drug transactions had taken place at Mr. Gutierrez's home. This evidence was sufficient to establish the physical proximity of the gun to drug activity. See, e.g., Chatman, 994 F.2d at 1517 (gun found in bedroom sufficiently proximate to drug transactions that occurred in apartment).

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge