# ZAFIRO ET AL. *v.* UNITED STATES

No. 91–6824. Argued November 2, 1992—Decided January 25, 1993

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, *post*, p. 541.

*Kenneth L. Cunniff,* by appointment of the Court, 504 U. S. 906, argued the cause and filed briefs for petitioners.

*John F. Manning* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Kristina L. Ament.*

JUSTICE O'CONNOR delivered the opinion of the Court.

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 14 of the Rules, in turn, permits a district court to grant a severance of defendants if "it appears that a defendant or the government is prejudiced by a joinder." In this case, we consider whether Rule 14 requires severance as a matter of law when codefendants present "mutually antagonistic defenses."

I

Gloria Zafiro, Jose Martinez, Salvador Garcia, and Alfonso Soto were accused of distributing illegal drugs in the Chicago area, operating primarily out of Soto's bungalow in Chicago and Zafiro's apartment in Cicero, a nearby suburb. One day, Government agents observed Garcia and Soto place a large box in Soto's car and drive from Soto's bungalow to Zafiro's apartment. The agents followed the two as they carried the box up the stairs. When the agents identified

themselves, Garcia and Soto dropped the box and ran into the apartment. The agents entered the apartment in pursuit and found the four petitioners in the living room. The dropped box contained 55 pounds of cocaine. After obtaining a search warrant for the apartment, agents found approximately 16 pounds of cocaine, 25 grams of heroin, and 4 pounds of marijuana inside a suitcase in a closet. Next to the suitcase was a sack containing $22,960 in cash. Police officers also discovered 7 pounds of cocaine in a car parked in Soto's garage.

The four petitioners were indicted and brought to trial together. At various points during the proceeding, Garcia and Soto moved for severance, arguing that their defenses were mutually antagonistic. Soto testified that he knew nothing about the drug conspiracy. He claimed that Garcia had asked him for a box, which he gave Garcia, and that he (Soto) did not know its contents until they were arrested. Garcia did not testify, but his lawyer argued that Garcia was innocent: The box belonged to Soto and Garcia was ignorant of its contents.

Zafiro and Martinez also repeatedly moved for severance on the ground that their defenses were mutually antagonistic. Zafiro testified that she was merely Martinez's girlfriend and knew nothing of the conspiracy. She claimed that Martinez stayed in her apartment occasionally, kept some clothes there, and gave her small amounts of money. Although she allowed Martinez to store a suitcase in her closet, she testified, she had no idea that the suitcase contained illegal drugs. Like Garcia, Martinez did not testify. But his lawyer argued that Martinez was only visiting his girlfriend and had no idea that she was involved in distributing drugs.

The District Court denied the motions for severance. The jury convicted all four petitioners of conspiring to possess cocaine, heroin, and marijuana with the intent to distribute. 21 U. S. C. § 846. In addition, Garcia and Soto were convicted of possessing cocaine with the intent to distribute,

§ 841(a)(1), and Martinez was convicted of possessing cocaine, heroin, and marijuana with the intent to distribute, *ibid.*

Petitioners appealed their convictions. Garcia, Soto, and Martinez claimed that the District Court abused its discretion in denying their motions to sever. (Zafiro did not appeal the denial of her severance motion, and thus, her claim is not properly before this Court.) The Court of Appeals for the Seventh Circuit acknowledged that "a vast number of cases say that a defendant is entitled to a severance when the 'defendants present mutually antagonistic defenses' in the sense that 'the acceptance of one party's defense precludes the acquittal of the other defendant.'" 945 F. 2d 881, 885 (1991) (quoting *United States* v. *Keck*, 773 F. 2d 759, 765 (CA7 1985)). Noting that "mutual antagonism . . . and other . . . characterizations of the effort of one defendant to shift the blame from himself to a codefendant neither control nor illuminate the question of severance," 945 F. 2d, at 886, the Court of Appeals found that the defendants had not suffered prejudice and affirmed the District Court's denial of severance. We granted the petition for certiorari, 503 U. S. 935 (1992), and now affirm the judgment of the Court of Appeals.

## II

Rule 8(b) states that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials "play a vital role in the criminal justice system." *Richardson* v. *Marsh*, 481 U. S. 200, 209 (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.*, at 210. For these reasons, we repeatedly have approved of joint trials. See *ibid.; Opper* v. *United States*, 348 U. S. 84, 95 (1954); *United States* v. *Marchant*, 12 Wheat.

480 (1827); cf. 1 C. Wright, Federal Practice and Procedure § 223 (2d ed. 1982) (citing lower court opinions to the same effect). But Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government. Thus, the Rule provides:

> "If it appears that a defendant or the government is prejudiced by a joinder of . . . defendants . . . for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

In interpreting Rule 14, the Courts of Appeals frequently have expressed the view that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to mandate severance. See, *e. g., United States* v. *Benton,* 852 F. 2d 1456, 1469 (CA6), cert. denied, 488 U. S. 993 (1988); *United States* v. *Smith,* 788 F. 2d 663, 668 (CA10 1986); *Keck, supra,* at 765; *United States* v. *Magdaniel-Mora,* 746 F. 2d 715, 718 (CA11 1984); *United States* v. *Berkowitz,* 662 F. 2d 1127, 1133–1134 (CA5 1981); *United States* v. *Haldeman,* 181 U. S. App. D. C. 254, 294–295, 559 F. 2d 31, 71–72 (1976), cert. denied, 431 U. S. 933 (1977). Notwithstanding such assertions, the courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses. See, *e. g., United States* v. *Tootick,* 952 F. 2d 1078 (CA9 1991); *United States* v. *Rucker,* 915 F. 2d 1511, 1512–1513 (CA11 1990); *United States* v. *Romanello,* 726 F. 2d 173 (CA5 1984). The low rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases involving conflicting defenses.

Nevertheless, petitioners urge us to adopt a bright-line rule, mandating severance whenever codefendants have conflicting defenses. See Brief for Petitioners i. We decline to do so. Mutually antagonistic defenses are not prejudicial *per se.* Moreover, Rule 14 does not require severance even

if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. See, *e. g.*, *United States* v. *Lane*, 474 U. S. 438, 449, n. 12 (1986); *Opper, supra,* at 95.

We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos* v. *United States*, 328 U. S. 750, 774–775 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton* v. *United States*, 391 U. S. 123 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, *e. g.*, *Tifford* v. *Wainwright*, 588 F. 2d 954 (CA5 1979) *(per curiam)*. The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson* v. *Marsh*, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. See 481 U. S., at 211.

Turning to the facts of this case, we note that petitioners do not articulate any specific instances of prejudice. In-

stead they contend that the very nature of their defenses, without more, prejudiced them. Their theory is that when two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt.

As to the first contention, it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. See, *e. g., United States* v. *Martinez,* 922 F. 2d 914, 922 (CA1 1991); *United States* v. *Manner,* 281 U. S. App. D. C. 89, 98, 887 F. 2d 317, 324 (1989), cert. denied, 493 U. S. 1062 (1990). Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton,* 391 U. S., at 131, n. 6 (internal quotation marks omitted). While "[a]n important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence," *ibid.* (emphasis added), a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.

As to the second contention, the short answer is that petitioners' scenario simply did not occur here. The Government argued that all four petitioners were guilty and offered sufficient evidence as to all four petitioners; the jury in turn found all four petitioners guilty of various offenses. Moreover, even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and "juries are presumed to follow their instructions." *Richard-*

*son, supra,* at 211. The District Court properly instructed the jury that the Government had "the burden of proving beyond a reasonable doubt" that each defendant committed the crimes with which he or she was charged. Tr. 864. The court then instructed the jury that it must "give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or to her." *Id.,* at 865. In addition, the District Court admonished the jury that opening and closing arguments are not evidence and that it should draw no inferences from a defendant's exercise of the right to silence. *Id.,* at 862–864. These instructions sufficed to cure any possibility of prejudice. See *Schaffer* v. *United States,* 362 U. S. 511, 516 (1960).

Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts. Because petitioners have not shown that their joint trial subjected them to any legally cognizable prejudice, we conclude that the District Court did not abuse its discretion in denying petitioners' motions to sever. The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE STEVENS, concurring in the judgment.

When two people are apprehended in possession of a container filled with narcotics, it is probable that they both know what is inside. The inference of knowledge is heightened when, as in this case, both people flee when confronted by police officers, or both people occupy the premises in which the container is found. See *ante,* at 535–536. At the same time, however, it remains entirely possible that one person did not have such knowledge. That, of course, is the argument made by each of the defendants in this case: that he or she did not know what was in the crucial box or suitcase. See *ante,* at 536.

Most important here, it is also possible that *both* persons lacked knowledge of the contents of the relevant container. Moreover, that hypothesis is compatible with individual defenses of lack of knowledge. There is no logical inconsistency between a version of events in which one person is ignorant, and a version in which the other is ignorant; unlikely as it may seem, it is at least theoretically possible that both versions are true, in that both persons are ignorant. In other words, dual ignorance defenses do not necessarily translate into "mutually antagonistic" defenses, as that term is used in reviewing severance motions, because acceptance of one defense does not necessarily preclude acceptance of the other and acquittal of the codefendant.[1]

In my view, the defenses presented in this case did not rise to the level of mutual antagonism. First, as to Garcia and Martinez, neither of whom testified, the only defense presented was that the Government had failed to carry its burden of proving guilt beyond a reasonable doubt. Nothing in the testimony presented by their codefendants, Soto and Zafiro, supplemented the Government's proof of their guilt in any way. Soto's testimony that he did not know the contents of the box he delivered with Garcia, as discussed above, could have been accepted *in toto* without precluding acquittal of his codefendant. Similarly, the jury could have accepted Zafiro's testimony that she did not know the contents of the suitcase found in her apartment, and also acquitted Martinez.

It is true, of course, that the jury was unlikely to believe that none of the defendants knew what was in the box or suitcase. Accordingly, it must be acknowledged that if the jury had believed that Soto and Zafiro were ignorant, then it would have been more likely to believe that Garcia and Martinez were not. That, however, is not the standard for

---

[1] See *ante*, at 538, citing cases. See also *State* v. *Kinkade*, 140 Ariz. 91, 93, 680 P. 2d 801, 803 (1984) (defining "mutually exclusive" defenses).

mutually antagonistic defenses.[2] And in any event, the jury in this case obviously did not believe Soto and Zafiro, as it convicted both of them. Accordingly, there is no basis, in law or fact, for concluding that the testimony of Soto and Zafiro prejudiced their codefendants.

There is even less merit to the suggestion that Soto or Zafiro was prejudiced by the denial of their severance motions. Neither Garcia nor Martinez testified at all, of course, and the District Court explicitly cautioned the jury that the arguments made by their attorneys were not to be considered as evidence. *Ante,* at 541. Moreover, the assertion by his counsel that Garcia did not know the contents of the box is not inconsistent with Soto's ignorance or innocence; nor is the similar assertion by counsel for Martinez inconsistent with Zafiro's possible innocence. In my opinion, the District Court correctly determined that the defenses presented in this case were not "mutually antagonistic." See App. 88–89.

I would save for another day evaluation of the prejudice that may arise when the evidence or testimony offered by one defendant is truly irreconcilable with the innocence of a codefendant. Because the facts here do not present the issue squarely, I hesitate in this case to develop a rule that would govern the very different situation faced in cases like *People* v. *Braune,* 363 Ill. 551, 557, 2 N. E. 2d 839, 842 (1936), in which mutually exclusive defenses transform a trial into "more of a contest between the defendants than between the people and the defendants." Under such circumstances, joinder may well be highly prejudicial, particularly when the prosecutor's own case in chief is marginal and the decisive evidence of guilt is left to be provided by a codefendant.

The burden of overcoming any individual defendant's presumption of innocence, by proving guilt beyond a reasonable doubt, rests solely on the shoulders of the prosecutor. Joinder is problematic in cases involving mutually antagonistic

---

[2] Cf. *Kinkade,* 140 Ariz., at 93, 680 P. 2d, at 803 (distinguishing "competing" from mutually antagonistic defenses).

defenses because it may operate to reduce the burden on the prosecutor, in two general ways. First, joinder may introduce what is in effect a second prosecutor into a case, by turning each codefendant into the other's most forceful adversary.[3] Second, joinder may invite a jury confronted with two defendants, at least one of whom is almost certainly guilty, to convict the defendant who appears the more guilty of the two regardless of whether the prosecutor has proven guilt beyond a reasonable doubt as to that particular defendant.[4] Though the Court is surely correct that this second risk may be minimized by careful instructions insisting on separate consideration of the evidence as to each codefendant, *ante,* at 540–541, the danger will remain relevant to the prejudice inquiry in some cases.[5]

Given these concerns, I cannot share the Court's enthusiastic and unqualified "preference" for the joint trial of defendants indicted together. See *ante,* at 537. The Court correctly notes that a similar preference was announced a few years ago in *Richardson* v. *Marsh,* 481 U. S. 200, 209 (1987), and that the Court had sustained the permissibility

---

[3] "Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant. In order to zealously represent his client, each codefendant's counsel must do everything possible to convict the other defendant. The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor." *United States* v. *Tootick,* 952 F. 2d 1078, 1082 (CA9 1991). See also *United States* v. *Romanello,* 726 F. 2d 173, 179 (CA5 1984).

[4] See *State* v. *Vinal,* 198 Conn. 644, 652, 504 A. 2d 1364, 1368 (1986) (in joint trial with mutually antagonistic defenses, "where one defendant is found not guilty, it becomes likely under these circumstances that the conviction of the losing defendant is more a result of his codefendant's success in defending himself than it is a product of the state's satisfaction of its constitutional duty to prove the accused guilty beyond a reasonable doubt").

[5] *Tootick,* 952 F. 2d, at 1082. See also *People* v. *Braune,* 363 Ill. 551, 556, 2 N. E. 2d 839, 842 (1936) ("[N]o judge, however learned and skillful," could have prevented risk of prejudice in particularly aggravated case).

of joint trials on at least two prior occasions.[6] There will, however, almost certainly be multidefendant cases in which a series of separate trials would be not only more reliable, but also more efficient and manageable than some of the mammoth conspiracy cases which the Government often elects to prosecute. And in all cases, the Court should be mindful of the serious risks of prejudice and overreaching that are characteristic of joint trials, particularly when a conspiracy count is included in the indictment. Justice Jackson's eloquent description of these concerns in his separate opinion in *Krulewitch* v. *United States*, 336 U. S. 440, 454 (1949), explains why there is much more at stake here than administrative convenience. See also *United States* v. *Romanello*, 726 F. 2d 173 (CA5 1984).

I agree with the Court that a "bright-line rule, mandating severance whenever codefendants have conflicting defenses" is unwarranted. See *ante*, at 538. For the reasons discussed above, however, I think district courts must retain their traditional discretion to consider severance whenever mutually antagonistic defenses are presented. Accordingly, I would refrain from announcing a preference for joint trials, or any general rule that might be construed as a limit on that discretion.

Because I believe the District Court correctly decided the severance motions in this case, I concur in the Court's judgment of affirmance.

---

[6] In neither *Opper* v. *United States*, 348 U. S. 84 (1954), nor *United States* v. *Marchant*, 12 Wheat. 480 (1827), however, did the Court express a "preference" for joint trials.