989 F.2d 508
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Concepcion DOMINGUEZ-ALPARO, Defendant-Appellant.
 No. 90-2240.
 United States Court of Appeals, Tenth Circuit.
 March 16, 1993.
 
 Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Concepcion Dominguez-Alparo appeals her conviction for importation of more than 100 kilograms of marijuana and possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 960(b)(2). She raises one issue on appeal: "Whether [she] was prejudiced at trial by joinder with codefendant Victor Santos Huerta to the extent that a severance should have been granted as a matter of law." Appellant's Brief at 2. We affirm.
 
 
 3
 The parties presented the following evidence at trial. Dominguez-Alparo, along with passenger codefendant San Juana Maese De Amaro, entered a checkpoint in New Mexico driving a white Ford pickup truck. At the checkpoint, Border Patrol Agent Manuel Padilla, Jr. asked to see identification showing citizenship. Dominguez-Alparo produced an I-94 immigration document with a poor quality picture. Due to the poor picture, Agent Padilla directed the two to the secondary inspection area of the checkpoint, where he asked Dominguez-Alparo additional questions about the I-94. She was extremely nervous, and she stuttered and avoided eye contact. She and Maese had only one light bag with them. Agent Padilla asked Dominguez-Alparo where they were going. He testified that she said they were going to Albuquerque to fix her sick aunt's papers. He believed she was referring to immigration papers.
 
 
 4
 Agent Padilla visually inspected the truck and noticed marijuana in the truck bed. He asked for and received permission to inspect the truck with a drug sniffing dog. The dog alerted to the bed of the truck. The truck had a secret compartment holding 236 pounds of marijuana.
 
 
 5
 Border Patrol Agent Arturo Rocha, Jr. and Agent Padilla arrested Dominguez-Alparo and Maese. Agent Rocha drove the truck and Dominguez-Alparo to the Border Patrol station in Las Cruces. On the trip to Las Cruces, she told Agent Rocha that she had bought the truck a few days earlier, she had driven the truck from Juarez to El Paso the day before, and in El Paso at an inspection area, a drug sniffing dog had not alerted. She also told Agent Rocha that she was going to Albuquerque to meet the seller of the truck, whose name she could not remember, to obtain the truck title. Upon reaching Las Cruces, Agent Rocha found no indication that Dominguez-Alparo had passed through a checkpoint in El Paso from Mexico.
 
 
 6
 Huerta, later coming forward on his own initiative, gave both oral and written statements to Border Patrol Agent Alvin Evenson indicating that he had tricked Dominguez-Alparo into transporting the marijuana. According to his written statement, which was admitted as evidence, he sold her the truck in order to get her to take the truck to Albuquerque, where he intended to reclaim possession of the truck and return her down payment money. Orally, he also told Agent Evenson that he had obtained the drugs in Mexico. He stated that he had followed Dominguez-Alparo to the checkpoint, but he had quickly departed when he saw her and Maese being arrested.
 
 
 7
 Huerta indicated that he would enter a guilty plea in order that the charges against Dominguez-Alparo and Maese could be dropped. Sometime after giving the statement, Huerta advised his attorney that he would not plead guilty because he had not been paid the $60,000 Dominguez-Alparo had promised him for taking the responsibility.
 
 
 8
 At the joint trial, Huerta testified that although he had previously served time in jail for transporting marijuana, he had no role with regard to this marijuana. Dominguez-Alparo, according to his testimony, agreed to pay him $60,000 plus attorney's fees and bonds for pleading guilty. She paid him part of the money, gave him and his wife drugs to support their habits, gave them a car and apartment to use, and bought Huerta new clothing. Dominguez-Alparo coached him before he gave his statement to Agent Evenson. Huerta also testified that Dominguez-Alparo had nice possessions despite being on welfare.
 
 
 9
 In summary, Huerta defended himself by asserting that Dominguez-Alparo was solely responsible for transporting the marijuana and that she had offered him money to take responsibility for her. Dominguez-Alparo, however, defended herself by asserting that Huerta tricked her into transporting the marijuana and then offered her money to conceal his involvement.
 
 
 10
 She testified that she bought the truck from Huerta the day before she was arrested and that she was traveling to Albuquerque to pick up the truck papers from him. She stated that she had thrown away the map to the house in Albuquerque of the owner of the truck, where she was to pick up the papers. She also testified that she had no knowledge of the secret compartment or marijuana. She had her suspicions about whether the truck was stolen when she noticed a black truck enter the checkpoint area. At that time, she became nervous because she did not have the title to the truck. She denied telling Agent Padilla she was going to Albuquerque to fix her sick aunt's papers and admitted she had lied about crossing from Mexico to El Paso with the truck. She testified Huerta asked her to plead guilty for $10,000, so that neither he nor his mother would be implicated. She denied promising Huerta money for pleading guilty. She claimed he and his wife took her car and broke into her apartment.
 
 
 11
 The jury found Dominguez-Alparo guilty on both counts and Huerta not guilty on either count.[1] She was sentenced to sixty-three months' imprisonment for each count,--with the sentences to run concurrently.
 
 
 12
 On appeal, Dominguez-Alparo argues that her defense and Huerta's defense were mutually antagonistic, and, thus, as a matter of law, the trials should have been severed. Alternatively, she maintains that without severance she was prejudiced at trial.[2]
 
 
 13
 The parties agree that no motion for severance was ever presented to the district court. Since Dominguez-Alparo did not seek severance in the trial court, she waived the issues presented unless she can show actual prejudice resulting from the joint trial.[3] See United States v. Killip, 819 F.2d 1542, 1547 (10th Cir.), cert. denied, 484 U.S. 987 (1987).
 
 
 14
 Federal Rule of Criminal Procedure 8(b) provides that two or more defendants may be charged in the same indictment if they allegedly participated in the same acts constituting the offense. Generally, defendants who are indicted together should be tried together. Zafiro v. United States, 113 S.Ct. 933, 937 (1993). If, however, it appears that a defendant is prejudiced by the joinder, Fed.R.Crim.P. 14 provides that the district court may order severance.
 
 
 15
 The Supreme Court has recently held, in a case in which the defendants moved for severance, that "[m]utually antagonistic defenses are not prejudicial per se." Zafiro, 113 S.Ct. at 938. When codefendants present mutually antagonistic defenses Rule 14 does not require severance, even if prejudice is shown. Id. Rather, the district court has sound discretion to tailor appropriate relief. Id. "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. Limiting instructions are often sufficient to cure any risk of prejudice. Id.
 
 
 16
 Although we recognize that a motion for severance on the ground of mutually antagonistic defenses was made in Zafiro, whereas no motion was made in this case, we believe Zafiro controls the outcome of this case. Under the circumstances of this case, we need not decide whether or to what extent the tests of "actual prejudice" and "serious risk" differ. We are satisfied that there was no fundamental trial error and that the jury could make a proper determination without severance. Accordingly, we conclude there was neither "actual prejudice" nor "serious risk" in this case.
 
 
 17
 Dominguez-Alparo alleges that acceptance of one defendant's defense precluded acquittal of the other defendant. Also, she maintains, without setting forth any specific instances of prejudice, that the antagonistic nature of their defenses prejudiced them. These allegations alone do not present a sufficient factual basis for prejudice. Cf. United States v. Smith, 788 F.2d 663, 668 (10th Cir.1986) (whether actual prejudice is shown is a fact question).
 
 
 18
 Dominguez-Alparo was not entitled to severance merely because she may have had a better chance for acquittal with a separate trial. Zafiro, 113 S.Ct. at 938. In fact her chances for acquittal may have been better with a joint trial. Although Dominguez-Alparo was aware prior to trial, as she admits in her brief on appeal, that she and Huerta would assert contrary defenses, she did not move for severance. Thus, it appears that she made an informed strategic decision to proceed with a joint trial. The government points out that if Dominguez-Alparo had moved for and been granted severance, Huerta's exculpatory statement would have been inadmissible under Fed.R.Evid. 804(b)(3), which excludes statements against interest when the declarant is available as a witness, and the government would not have sought to use the statement. At a joint trial, however, the government was required to introduce the statement. Thus, we conclude Dominguez-Alparo's decision not to move for severance was based on trial strategy. She cannot now argue that the trial strategy, which did not compromise her trial rights, was prejudicial to her. Additionally, we note she did not file a reply brief contesting the government's arguments concerning trial strategy.
 
 
 19
 Even if there was some risk of prejudice, it was cured with proper instructions similar to those approved in Zafiro, 113 S.Ct. at 939. In Zafiro, the Court stated that the district court properly instructed the jury that the government had the burden of proving beyond a reasonable doubt that each defendant committed the charged crimes, that it must separately consider each defendant and the charges against that defendant, and that the opening and closing arguments were not evidence. Id. The district court in this case instructed similarly. It told the jury that any statements, objections, or arguments made by the lawyers were not evidence in the case. Vol. I, tab 68 at 13. More importantly, the court instructed that
 
 
 20
 A separate crime or offense is charged against each of the defendants in each count of the indictment. Each offense, and the evidence pertaining to it, should be considered separately. Also, the case of each defendant should be considered separately and individually. You should analyze what the evidence in the case shows with respect to each defendant leaving out of consideration entirely any evidence admitted solely against the other defendants. The fact that you may find one or more of the defendants guilty or not guilty of any of the offenses charged should not control your verdict as to any other offense or any other defendants.
 
 
 21
 Id. at 18. Additionally, the court instructed the jury that it must find a defendant guilty beyond a reasonable doubt. Id. at 3, 4. The jury was able to follow these instructions, evaluate the credibility of the witnesses, and return a reliable verdict. See Zafiro, 113 S.Ct. at 939; United States v. Swingler, 758 F.2d 477, 494 (10th Cir.1985).
 
 
 22
 Because the jury reached a decision based on proper instructions and a separate trial could have been potentially more harmful to Dominguez-Alparo, we conclude she did not suffer any prejudice by the joint trial under any standard. Accordingly, the judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The district court granted Maese's motion for directed verdict at the close of the government's case
 
 
 [2]
 Dominguez-Alparo suggests that there was insufficient evidence to convict beyond a reasonable doubt, especially in light of the granting of Maese's motion for directed verdict. After examining the transcript of the trial, we are convinced the evidence was sufficient to support her conviction. See United States v. Sasser, 974 F.2d 1544, 1560 (10th Cir.1992) (evidence sufficient when, viewed in light most favorable to government, reasonable jury could find defendant guilty beyond reasonable doubt), cert. denied, 113 S.Ct. 1063 (1993)
 
 
 [3]
 The inquiry on Dominguez-Alparo's claims merges because she must show actual prejudice from the joint trial