**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**RICKY ANTHONY PU'AA and POE FAUMUINA, Defendants**

High Court of American Samoa
Trial Division

CR No. 29-96
CR No. 30-96

November 22, 1996

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Before RICHMOND, Associate Justice, TAUANU`U, Associate Judge, and ATIULAGI, Associate Judge.

Counsel:       For Plaintiff, Lionel M. Riley, Assistant Attorney
               General
               For Defendant Ricky Anthony Pu`aa, William H.
               Reardon
               For Defendant Poe Faumuina, Barry I. Rose

Order Denying Motions To Sever, Surpress Evidence and Change Venue, and Concerning Jury Voir Dire:

On October 15, 1996, defendant Ricky Pu`aa ("Pu`aa") moved to sever the trial, suppress his statements, suppress all evidence seized, and change venue or permit extensive voir dire of prospective jurors by the court and counsel or the court. On October 23, 1996, defendant Poe Faumuina ("Faumuina") moved for attorney conducted voir dire after the court's inquiries to the jurors. We heard all motions on November 6, 1996. All counsel were present. Pu`aa was also present, and Faumuina waived his right to be present.

## DISCUSSION

1.     Severance

Pu`aa and Faumuina are jointly charged by plaintiff American Samoa Government ("ASG") with possession of a controlled substance, to wit: methamphetamine, on or about April 12, 1996, in American Samoa, in violation of A.S.C.A. § 13.1022(a). The joinder is based on T.C.R.Cr.P. 8(b). Pu`aa now moves to sever the trial under T.C.R.Cr.P. 14, which states in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in a complaint or an information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice may require.

Pu'aa cites *United States v. Sheikh*, 654 F.2d 1057 (5th Cir. 1981) in support of his motion. The trial court's refusal to sever was upheld in

*Sheikh.* The key factors in that case are notably similar to those highlighted by the motion in this case. First, however, we will state the standards applicable to severance, which the *Sheikh* court also enunciated clearly.

The trial court must weigh the prejudice to a defendant by a joint trial against the interests of judicial economy, and factor in the means of lessening the detriment. *Sheikh* at 1064. The trial court abuses its discretion in refusing a severance when the defendant is denied a fair trial because the prejudice in a joint trial cannot be effectively alleviated and thus compels separate trials. *Id.* "The existence of antagonistic defenses among codefendants is cause for severance when the defenses conflict to the point of being irreconcilable and mutually exclusive." *Id.* at 1065.

As in this case, each codefendant in *Sheikh* asserted lack of knowledge of the controlled substance in the container. These defenses are not antagonistic. Each codefendant in *Sheikh* also claimed the container belonged to another codefendant. These defenses are antagonistic, irreconcilable, and mutually exclusive. Neither Pu'aa nor Faumuina has yet to expressly make this contention. Perhaps Faumuina does implicitly, but Pu'aa has not disclaimed bringing the container to American Samoa. Moreover, neither Pu'aa nor Faumuina has yet to bolster any finger pointing by claiming knowledge or belief that the other knew the controlled substance was present in the container. This factor materially minimized any prejudice in *Sheikh.* In sum, Pu'aa has not shown compelling prejudice on the basis of antagonistic, irreconcilable, and mutually exclusive defenses.

Moreover, as ASG points out, the United States Supreme Court recently declined to adopt a rule mandating severance whenever codefendants have conflicting defenses, noting that "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 122 L. Ed. 2d 317, 325 (1993). The *Zafiro* court enumerated some instances where prejudice might be found, none of which are apparent in the case at bar.

This court clearly has "a continuing duty at all stages of the trial to grant severance if prejudice does appear." *United States v. Kopituk*, 690 F.2d 1289, 1316 (11th Cir. 1982). Currently, however, no showing of compelling prejudice appears. We have no reason to believe that the defenses offered by Pu'aa and Faumuina will be so antagonistic as to be irreconcilable and mutually exclusive. Indeed, at this point we have no

reason to believe that the defenses will be more then merely marginally antagonistic. [1]

Pu'aa's counsel also foresees that Faumuina's counsel will be hostile and adversarial towards Pu'aa during the trial to the point of denying Pu'aa a fair trial. However, we are confident at this point that if that risk of prejudice becomes apparent, less dramatic measures, such as limiting instructions and trial supervision will suffice to cure any such risk. *See Zafiro*, 122 L. Ed. 2d at 325; *Sheikh*, 654 F.2d at 1066.

As such, Pu'aa's motion to sever will be denied.

2.      Suppression of Pu'aa's Statements

Pu'aa next moves to suppress the statements he gave to law enforcement officers after his arrest on the grounds that he was not informed of and did not waive his Miranda rights before he made the statements. Pu'aa was arrested and made both oral and written statements while he was at the Pago Pago International Airport. Pu'aa made an oral statement and then a written statement. The written statement bears a beginning time of 2:45 a.m. and concluding time of 3:00 a.m. He was also warned and signed a waiver of his Miranda rights, which bears a time of 1:51 a.m. Both parties agree that police officer Paulo Leuma, not Pu'aa, filled in these times.

Pu'aa testified at the hearing that his statements were compelled prior to him receiving his Miranda warning. Kaleialoha Cadinha, Pu'aa's girlfriend, testified, in support of his claim, that she received a collect phone call from Pu'aa while he was incarcerated in the territorial correctional facility, where he was taken *after* his interrogation at the airport. She testified that the phone call was made between 2:00 a.m. and 2:30 a.m. American Samoa time. She called American Samoa later to confirm Pu'aa's arrest. Pu'aa argues that this testimony puts into serious

---

[1]      Pu'aa also claims compelling prejudice in Dennis Fuimaono's deposition testimony. However, we do not yet have this deposition before us to evaluate for this or any other purpose. Moreover, we will observe that, to the extent Fuimaono's testimony incriminates Pu'aa, Faumuina is not the apparent direct source. If Pu'aa is ultimately convicted, Fuimaono's testimony may or may not contribute to that result. All incriminating evidence is prejudicial by nature, but that feature does not itself impair admissibility or require severance. Furthermore, we do not now know whether Fuimaono's testimony, either in person or by deposition, will actually be adduced at the trial or, if it is, by whom.

doubt ASG's position that Pu'aa's statements, the written statement beginning at 2:45 a.m., were made after he waived his rights.

Both officer Leuma and customs officer Se Lautogia testified that the waiver was signed before the statements were given. They did not agree on the exact time the documents were signed, but both agreed the waiver came first. The order, and not the exact time, is the important issue.

Although no witness gave a perfectly lucid description of events, we find that ASG's witnesses gave more reliable accounts. The testimony by Pu'aa and Cadinha on the time of their phone calls also presents a best evidence problem. Surely telephone records or bills exists which contain Pu'aa's long distance collect call to Hawaii and Cadinha's subsequent long distance calls to American Samoa. Pu'aa failed to proffer such a record or bill.

We find that Pu'aa was fully apprised of his Miranda rights and waived those rights before he gave his oral statement and then wrote and signed his written statement. Thus, Pu'aa's motion to suppress his written statement will be denied.

3.      Suppression of Evidence Seized

Pu'aa also moves to have the seized evidence, the brief case containing the controlled substance, suppressed. Pu'aa argues that the customs search at the airport was an unconstitutional search and seizure in violation of Pu'aa's right to travel as protected by the U.S. Constitution.

Further, Pu'aa argues that the Legislature of American Samoa cannot enact a statute defining U.S. citizens and nationals as "foreign" and then subject those "foreign" persons to a search when traveling between U.S. jurisdictions, specifically from Hawaii to American Samoa, when the U.S. Congress has defined an "alien" in U.S.C.S. § 1101(a)(3). He asserts that the supremacy clause of Article VI of the U.S. Constitution precludes the territorial legislation.

■ The extent the due process clause of the U.S. Constitution may apply to American Samoa is still unclear. *See Banks v. American Samoa Government*, 4 A.S.R.2d 113, 124-125 (1987). However, as the *Banks* court stated, the U.S. Constitution does not apply when it would tend to be destructive of traditional Samoan culture. We believe that to the extent the U.S. Constitution would deprive ASG of the ability to search the luggage of persons entering American Samoa, it is inapplicable in American Samoa. This situation is the kind where rights which may be

fundamental in the United States would tend to be destructive to the traditional culture. *Id.*[2]

Moreover, Article I, § 3 of the Revised Constitution of American Samoa specifically authorizes the enactment of legislation to protect the lands customs and culture of American Samoa. This statute falls squarely within the ambit of that constitutional authorization.

■ Pu`aa's next argument, regarding the supremacy clause, is spurious at best. A.S.C.A. § 27.1001(i) defines "foreign" as meaning "any place beyond the limits of American Samoa." The Legislature of American Samoa has not condemned a class of people by passing this statute. Rather, the Legislature has merely defined a term for purposes of a particular statute. This definition does not diminish the citizenship of anyone who travels beyond the borders of American Samoa. Nor does it attempt to modify 8 U.S.C.S. § 1101(a)(3), the U.S. Constitution, or American Samoa's Instruments of Cession with the United States. Rather it simply defines the term "foreign" for purposes of applying the customs regulations set forth in A.S.C.A. §§ 27.1001-27.1031.

As such this statute implicates neither the right of intrastate travel as guaranteed by Article IV, § 2, nor the supremacy clause of Article VI of the U.S. Constitution. Thus, Pu`aa's motion to suppress the evidence seized as a result of the customs search will be denied.

### 4. Change of Venue

Pu`aa moves for a change of venue in light of certain pretrial publicity and suggests that ASG should fund travel to Hawaii to obtain an impartial jury.

■ There is, of course, no other venue available for ASG's felony prosecutions other than the High Court. Pu`aa's motion for change of venue is therefore denied.

### 5. Jury Voir Dire

---

[2] Even were the U.S. Constitution applicable in this instance, we believe that this statute would surely pass constitutional muster. Since no suspect classification is involved the statute would need only pass the rational basis test. Surely this statute is rationally related to the legitimate public interest of regulating imports into American Samoa, and safeguarding against dangerous or illegal materials. This is particularly true so long as American Samoa is outside the customs area of the United States. *See* 19 U.S.C.S. § 1401(h).

Alternatively to a change of venue, Puʻaa moves for extensive voir dire of the prospective jurors by the court and his counsel or by the court alone. Faumuina moves to allow his counsel to voir dire jurors in addition to the court's inquiries.

Both Puʻaa and Faumuina submitted comprehensive questions for jury voir dire in conjunction with these motions. We will study those questions in preparing for the court's voir dire and ask the prospective jurors the ones, at least in substance, we consider appropriate. We will also take every reasonable precaution to ensure that counsel may effectively exercise Puʻaa's and Faumuina's right to challenge jurors for cause and peremptorily.

■ Faumuina cites T.C.R.Cr.P. 24(a) as authorizing attorney conducted voir dire. On the other hand, A.S.C.A. § 3.0232(b) seems to mandate that jury voir dire is the court's exclusive province. The statute prevails over court rules. *See, e.g.,* 16 Cal. Jur.3d (Rev.), Courts § 162 (1983); *see* also *Southwest Metal Fabricator v. Internacional de Aceros, S.A.,* 503 F.Supp. 76, 78 (S.D. Texas 1980). However, we intend to consider this matter further and will advise counsel of the court's final position before the trial begins. If we conclude that attorney conducted voir dire is permissible, and if during voir dire it appears useful to have counsel question the prospective jurors, we will allow all counsel to participate in the process directly.

### ORDER

We deny Puʻaa's motions to sever, suppress statements and other evidence, and change venue. We will make a final ruling on the motions to allow attorney conducted jury voir dire before the trial begins.

It is so ordered.