order without showing sufficient justification, and the court granted Husker Concrete's motion for sanctions, dismissing the case. Upon our review, we find this was not an abuse of discretion following Gonzalez' failure to comply with the district court's orders and the rules of discovery.

## CONCLUSION

We find the district court did not abuse its discretion in determining that sanctions were appropriate under the circumstances and granting default judgment in favor of Husker Concrete.

Affirmed.

———————————

State of Nebraska, appellee, v.
Aaron J. Clark, appellant.
___ N.W.2d ___

Filed December 31, 2013.    No. A-13-017.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's finding for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.
2. **Trial: Joinder: Appeal and Error.** A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion.
3. **Trial: Joinder: Proof: Appeal and Error.** The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced.
4. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government.
5. ____: ____. The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution do not protect citizens from all governmental intrusion, but only from unreasonable intrusions.
6. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications.

7. **Warrantless Searches: Probable Cause.** One of the exceptions to warrantless searches and seizures is a search or seizure supported by probable cause.

8. **Criminal Law: Search and Seizure: Probable Cause: Police Officers and Sheriffs: Motor Vehicles.** The odor of marijuana emanating from a vehicle provides probable cause to search the vehicle and arrest the occupants where there is sufficient foundation as to the expertise of the officer.

9. **Trial: Joinder.** There is no constitutional right to a separate trial. The right is statutory and depends upon a showing that prejudice will result from a joint trial.

10. **Trial: Joinder: Proof.** The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced.

11. **Trial: Joinder: Indictments and Informations.** The propriety of a joint trial involves two questions: whether the consolidation is proper because the defendants could have been joined in the same indictment or information, and whether there was a right to severance because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial.

12. **Trial: Joinder.** Consolidation is proper if the offenses are part of a factually related transaction or series of events in which both of the defendants participated.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Leslie E. Cavanaugh for appellant.

Jon Bruning, Attorney General, and Carrie A. Thober for appellee.

Inbody, Chief Judge, and Irwin and Moore, Judges.

Per Curiam.

## INTRODUCTION

Aaron J. Clark appeals his conviction in the district court for Douglas County for possession with intent to deliver marijuana. He argues that the district court should have suppressed evidence found in the vehicle he was driving, because police lacked probable cause to arrest him and conduct the search. He also argues that the trial court erred in consolidating his trial with that of his codefendant, because he was prejudiced by the consolidation. Because we find no merit to Clark's arguments on appeal, we affirm.

BACKGROUND

On March 15, 2011, Omaha police officers Joseph Mraz and Cody Baines were patrolling the area of Park and Woolworth Avenues in Omaha, Nebraska. The officers consider this a "high-crime area" with a lot of prostitution, drug activity, motor vehicle theft, and graffiti. Around 12:37 a.m., the officers noticed a 2008 Dodge Avenger traveling north on Park Avenue. The Avenger turned into an apartment complex in the area, but the officers did not follow and continued on their way. Several minutes later, the officers observed the Avenger again, this time traveling eastbound on Poppleton Avenue. Officer Mraz, who was driving the police cruiser, observed the Avenger turn right onto Park Avenue without using a turn signal. The officers initiated a traffic stop using emergency lights, spotlights, and "takedown" lights.

Officer Mraz approached the driver's side of the Avenger, while Officer Baines approached the passenger side. The driver, later identified as Clark, rolled down his window as the officers approached, and Officer Mraz detected the odor of marijuana coming from the Avenger. As Officer Mraz was asking Clark for his driver's license and vehicle registration, Officer Baines shined his flashlight into the back seat and observed a clear, gallon-sized plastic baggie on the floor that appeared to contain marijuana. Officer Baines then instructed Officer Mraz to have Clark exit the vehicle because there was marijuana in the back seat.

Officer Mraz got Clark out of the vehicle and placed him in handcuffs. He searched Clark and found $1,720 in cash in Clark's pockets. Officer Mraz then put Clark in the back of the police cruiser. At the same time, Officer Baines got the passenger, later identified as Jeron Morris, out of the vehicle, placed him in handcuffs, and put him in the back of another police cruiser that had arrived at the scene.

After the officers had secured Clark and Morris, Officer Baines removed the baggie from the back seat and verified, through look and smell, that the substance inside the baggie was marijuana. The officers then searched the rest of the Avenger. A digital scale with marijuana residue on it was discovered in the center console. The officers found another

gallon-sized plastic baggie in the trunk that contained a larger amount of marijuana. Subsequent testing confirmed that the substance in both baggies was, in fact, marijuana, and the total amount was nearly 1½ pounds. Clark and Morris were both charged with possession with intent to deliver marijuana.

Prior to trial, the State moved to consolidate Clark's case with Morris' case. Over objections by both defendants, the district court granted the motion. Also prior to trial, Clark filed a motion to suppress the evidence found in the Avenger. After a suppression hearing, the district court overruled Clark's motion.

Officers Mraz and Baines testified at trial. As of the time of trial, both officers had been with the Omaha Police Department for approximately 7 years. Each officer testified that he had received training on the smell of marijuana while at the police academy and had come in contact with marijuana during his work as a police officer. Specifically, Officer Baines testified that he had come in contact with marijuana more than 100 times in his 7-year career. Officer Mraz stated that he "couldn't even put a number" on how many times he had come in contact with marijuana during his career, but that it had been "[m]any, many times."

At the close of the State's case in chief, Clark moved for a mistrial on the basis that his case and Morris' case should not have been joined together. Clark argued that the questions asked by Morris' counsel of "the officer" damaged both Morris and Clark and that there was nothing Clark could do about it because the trials had been consolidated. The court overruled the motion. Clark was found guilty of the charged offense and sentenced to 1 to 2 years' imprisonment.

## ASSIGNMENTS OF ERROR

Clark assigns that the district court erred in (1) failing to grant his motion to suppress and (2) failing to grant separate trials to Clark and Morris.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment,

we apply a two-part standard of review. Regarding historical facts, we review the trial court's finding for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012).

[2,3] A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003). The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced. *Id*.

## ANALYSIS

*Motion to Suppress*.

Clark argues that the district court erred in failing to grant his motion to suppress. He claims that his arrest and the search of the Avenger were unlawful, because the officers lacked probable cause at the time. We disagree.

[4-7] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010). These constitutional provisions do not protect citizens from all governmental intrusion, but only from unreasonable intrusions. See *id*. Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications. *Smith, supra*. One of the exceptions to warrantless searches and seizures is a search or seizure supported by probable cause. See *id*.

[8] The Nebraska Supreme Court has held that the odor of marijuana emanating from a vehicle provides probable cause to search the vehicle and arrest the occupants where there is sufficient foundation as to the expertise of the officer. See *State v. Daly*, 202 Neb. 217, 274 N.W.2d 557 (1979). In *Daly*, the court upheld the search of a vehicle conducted after an officer stopped the vehicle for speeding and smelled marijuana

coming from inside the vehicle. At trial, the officer testified that he had been a member of law enforcement for over 2 years at the time of the traffic stop and had received instruction in drug recognition, including marijuana, during basic training and on-the-job training. The officer also stated that he had made approximately 50 prior similar arrests for possession of marijuana, wherein he stopped a vehicle for a traffic violation and smelled marijuana.

Likewise, in this case, there was sufficient foundation as to the expertise of the officers to justify a finding of probable cause. Both officers have been with law enforcement for approximately 7 years. They received training on marijuana detection while at the police academy and have come in contact with marijuana numerous times while on the job. Officer Mraz testified that he smelled the odor of marijuana as Clark rolled down the window. Thus, this evidence alone was sufficient to support the seizure of Clark and the search of the vehicle.

The probable cause in this case, however, went beyond merely the odor of marijuana, because Officer Baines observed marijuana in the vehicle before Clark was arrested or the vehicle was searched. Officer Baines testified that he observed the marijuana in the back seat as Officer Mraz was talking with Clark. Officer Baines then told Officer Mraz that there was marijuana in the back seat and asked him to remove Clark from the vehicle. Based upon this evidence, we conclude that the officers had sufficient probable cause to arrest Clark and search the Avenger. As such, the district court did not err in overruling Clark's motion to suppress.

*Consolidation of Trials.*

Clark assigns that the district court erred in failing to grant Morris and him separate trials. We note for the record that the trials were consolidated upon a motion by the State, which motion the district court granted over objections from Clark and Morris. Thus, we understand Clark to be challenging the joinder of his trial with that of Morris.

[9-11] The consolidation of separate cases is governed by Neb. Rev. Stat. § 29-2002 (Reissue 2008), which provides:

> (2) The court may order two or more indictments, informations, or complaints . . . if the defendants, if there is more than one, are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. The procedure shall be the same as if the prosecution were under such single indictment, information, or complaint.

There is no constitutional right to a separate trial. The right is statutory and depends upon a showing that prejudice will result from a joint trial. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003). The burden is on the party challenging a joint trial to demonstrate how and in what manner he or she was prejudiced. *Id*. The propriety of a joint trial involves two questions: whether the consolidation is proper because the defendants could have been joined in the same indictment or information, and whether there was a right to severance because the defendants or the State would be prejudiced by an otherwise proper consolidation of the prosecutions for trial. *Id*. We conclude that the trial court did not abuse its discretion in consolidating the trials of Clark and Morris.

[12] Consolidation is proper if the offenses are part of a factually related transaction or series of events in which both of the defendants participated. *Id*. There is no dispute that joinder was proper in the present case. Both defendants were charged with the same offense arising out of the same incident, and Clark concedes as much in his brief. Therefore, consolidation was proper.

We therefore turn to the second question: Would the defendants be prejudiced by the consolidation? In challenging consolidation, it was incumbent upon Clark to demonstrate how he would be prejudiced by the consolidation. Clark argues that he was prejudiced by Morris' counsel's accusing him of the crime while asserting that Morris was an innocent bystander and that through Morris' antagonistic defense strategy and prejudicial cross-examination of witnesses, Morris

was "relieving the State of establishing [its] burden." Brief for appellant at 12. In addition, Clark argues that he was prejudiced because the evidence was insufficient to convict him without help from Morris' counsel as evidenced by the fact that the jury acquitted Morris.

The Nebraska Supreme Court recently addressed this issue in *State v. Foster*, 286 Neb. 826, ___ N.W.2d ___ (2013). In *Foster*, the trial court granted the State's motion to consolidate Jeremy D. Foster's trial with that of his codefendant. Foster and his codefendant each moved to sever the trials, arguing that both defendants would "'point the finger'" at each other. *Id*. at 829, ___ N.W.2d at ___. The court overruled the motions, and the trials were held jointly.

On appeal, Foster argued, inter alia, that he was prejudiced by the joint trial because his defense was irreconcilable with and mutually exclusive of his codefendant's defense. The *Foster* court, citing *Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993), iterated that the existence of mutually antagonistic defenses is not prejudicial per se. Accordingly, even a defendant who is arguing that the existence of mutually exclusive or antagonistic defenses resulted in prejudice entitling him or her to severance must meet the high burden of showing that "'joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Foster*, 286 Neb. at 840, ___ N.W.2d at ___ (quoting *Zafiro, supra*).

The *Foster* court also noted that "on the whole, the federal circuit courts have repeatedly found that defenses that are based on 'finger pointing' do not result in prejudice sufficient to mandate severance." 286 Neb. at 841, ___ N.W.2d at ___. In order to be entitled to severance based on mutually exclusive defenses, the defendant must show real prejudice, rather than merely note that each defendant is trying to exculpate himself while inculpating the other. *Foster, supra*.

The *Foster* court concluded that the codefendants' defenses were not so mutually exclusive so as to entitle them to severance, because the jury was presented with a scenario where it

could acquit one defendant based on his defense of innocence without simultaneously rejecting the defense of the other. Similarly, the court found that the defenses were not sufficiently antagonistic to merit severance, because they were no more than mere "finger pointing," which is insufficient to require separate trials. Finally, the court determined that despite the codefendants' "finger pointing," the State still adduced sufficient evidence for the jury to find both defendants guilty.

The Eighth Circuit has applied a similar standard for prejudice, concluding that the mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials, as a codefendant frequently attempts to "'"point the finger," to shift the blame, or to save himself at the expense of the other.'" *U.S. v. Flores*, 362 F.3d 1030, 1040 (8th Cir. 2004). The Eighth Circuit also noted that a defendant does not have a right against having his codefendant elicit testimony which may be damaging to him. *Id.*

Even if there is some risk of prejudice that resulted from the joint trials, it can be cured with proper jury instructions. See *Zafiro, supra*. The *Zafiro* jury was instructed that the government had the burden of proving beyond a reasonable doubt that each defendant committed the crimes with which he was charged, that the jury must give separate consideration to each defendant and the charge against him, and that each defendant was entitled to have his case determined from his own conduct and from the evidence applicable against him. Finally, the district court had admonished the jury that opening and closing arguments were not evidence. On appeal, the Supreme Court found that these instructions sufficed to cure any possibility of prejudice.

Turning back to the case at hand, we conclude that Clark has failed to show that he was prejudiced by the joint trial based on Morris' antagonistic defense strategy and prejudicial cross-examination of witnesses. The fact that Morris "pointed the finger" at Clark and elicited testimony that was damaging to Clark does not establish that Clark was entitled to a separate trial, because their defenses were not mutually exclusive.

The jury could have found that neither Clark nor Morris possessed the marijuana, that only one of them had possession of it, or that they were both in possession of it. In other words, the jury's belief of Morris' claim of innocence did not necessarily lead to the conclusion that Clark's claim of innocence was false.

In addition, the evidence presented by the State alone was sufficient to support Clark's conviction, because the State established that Clark was the driver of the vehicle, the vehicle was registered to Clark's girlfriend, and the money was found in Clark's pocket. The State also elicited testimony from an Omaha police officer in the narcotics unit that the amount of marijuana found in the Avenger was consistent with distribution as opposed to personal use. Accordingly, Clark's and Morris' defenses were not prejudicial so as to require separate trials.

Moreover, the jury instructions were sufficient to cure any risk of prejudice that may have been present here. Similar to the instructions in *Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993), the jury in this case was instructed that it must come to a separate decision regarding each defendant, that it must find each defendant not guilty unless and until it decided that the State had proved him guilty beyond a reasonable doubt, that the State has the burden of proving beyond a reasonable doubt each and every element of the crime, and that the statements and arguments of the lawyers are not evidence. As such, Clark has not met his burden of showing that he was prejudiced by the joint trial, and this assignment of error is without merit.

## CONCLUSION

We conclude that the arrest of Clark and the search of the Avenger were undertaken with probable cause, because the officers smelled marijuana coming from the vehicle and saw a baggie full of marijuana on the floor of the back seat prior to the arrest and search. Thus, the district court did not err in overruling Clark's motion to suppress. Additionally, we find that Clark has failed to establish how consolidating his trial with that of Morris prejudiced him, and therefore, the

district court did not abuse its discretion in granting the State's motion to consolidate. Accordingly, we affirm Clark's conviction and sentence.

AFFIRMED.

---

In re Interest of Shane L. et al.,
children under 18 years of age.
State of Nebraska, appellee and cross-appellee,
v. Amanda L., appellant, and Cameron L.,
appellee and cross-appellant.
___ N.W.2d ___

Filed December 31, 2013.    Nos. A-13-380 through A-13-383.

1. **Juvenile Courts: Judgments: Appeal and Error.** Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. ____: ____. Before reaching the legal issues presented for review, an appellate court must determine whether it has jurisdiction.
4. **Final Orders: Appeal and Error.** There are three types of final orders that may be reviewed on appeal: (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made upon summary application in an action after a judgment is rendered.
5. **Indian Child Welfare Act: Jurisdiction: Final Orders.** An order denying a transfer of a case to tribal court affects a substantial right in a special proceeding and is, therefore, a final, appealable order.
6. **Jurisdiction: Final Orders: Time: Notice: Appeal and Error.** In order to vest an appellate court with jurisdiction, a notice of appeal must be filed within 30 days of the entry of the final order.
7. **Final Orders: Time: Appeal and Error.** If a party fails to timely perfect an appeal of a final order, he or she is precluded from asserting any errors on appeal resulting from that order.
8. **Parental Rights: Proof.** To terminate parental rights, the State must prove by clear and convincing evidence that one or more of the statutory grounds listed in Neb. Rev. Stat. § 43-292 (Cum. Supp. 2012) have been satisfied and that termination is in the child's best interests.