JOURNAL ENTRY AND OPINION
Appellant, Walter Zimmer, is appealing his convictions for attempted aggravated murder, felonious assault, kidnaping, aggravated burglary and aggravated robbery. For the following reasons, we affirm.
Appellant was tried together with co-defendants Thomas Siller and Rose Crowder. Appellant and Thomas Siller, were working on various repairs at the home of the victim, Lucy Zolkowski. Lucy was seventy-four years old. Appellant borrowed a total of $5,000 from Lucy, while Siller borrowed $12,000. The loans were made in small amounts from April through June, 1997. Sometimes Lucy would write as many as four checks a day to appellant or Siller.
At 3:49 a.m. on June 4, 1997, Siller called 911 from a pay phone. Siller said his friend told him that Lucy had been beaten. Siller was told to stay on the line for instructions, but he hung up the phone.
When the police arrived at Lucy's home, they noticed that the back door appeared to have been forced open. The house was ransacked. The dining room phone was ripped out of the wall. Lucy was discovered sitting in a chair in the living room. Her arms were tied to the arms of the chair. Lucy's feet were tied together, and she was tied around the neck. She was tied so tightly that her arms and legs were swollen around the ties. She was very badly beaten about the head and had a broken jaw. Lucy was covered with a great deal of blood, which had coagulated. There was blood spattered on the walls and floor by the chair where Lucy was found.
Lucy was unable to talk to the police or paramedics. She continues to reside in a nursing home due to her injuries. She does not speak and is unresponsive.
Lucy's neighbors testified that Lucy was extremely cautious about opening her door for anyone. These neighbors also saw Siller help Lucy get into a car around 7:30 p.m. on June 3, 1997. One neighbor, Virginia Nagy, testified that she saw appellant knocking on Lucy's door at 1:00 a.m. one evening.
On June 6, 1997, appellant, Siller, and their friend Rose Crowder voluntarily gave written statements to the police. Zimmer's statement said that on June 3, 1997, he and Siller were at Rose Crowder's from 7:00 p.m. until midnight. Then, he and Siller went to Chalkie's Bar. Later, around 1:30 or 2:00 a.m., appellant was walking by Lucy's house. He noticed the lights on. Lucy did not answer the door, so he walked around back. From the screen door, he could see Lucy's feet. The door was open, so he went in. When he saw that Lucy had been beaten, he asked her who had beaten her. He touched various objects, including a coin purse and a strong box which was in the closet. He was going to call 911 on the dining room phone, but he did not because there was a warrant out for his arrest for driving under a suspended license. Instead, he went to Rose Crowder's house, who lived down the street. Rose was afraid to call 911 from her house. They paged Siller, who went to a payphone to call 911.
Siller's statement said that Siller did not call 911 from Rosie's because appellant was hysterical. After he dropped appellant at home, he called 911 from the payphone. Siller said the last time he saw Lucy that day was at 4:00 p.m.
Rose Crowder's statement said that appellant and Siller were afraid to call 911 from her house, because they both had warrants. Siller and appellant were at her house from 11:00 a.m. until midnight, and again around 2:00 a.m.
The police found a fingerprint which matched Siller's on an ashtray in Lucy's living room. A fingerprint matching appellant's was found on a glass block window in the kitchen. A fingerprint matching a man named Jason Smith was found in the rear bedroom.
When Jason Smith was arrested as a suspect, he was hiding in a closet. Jason Smith gave two statements to the police saying that he had no involvement in the case. Smith attempted to set up a false alibi. Smith learned that the police had found his fingerprints in the victim's home, and that Smith's girlfriend would testify against him. The police had also confiscated some of Smith's clothing which had blood stains. Smith agreed to plead guilty to aggravated burglary, in exchange for testifying against Siller and appellant. Smith received a three year prison term for the aggravated burglary count.
Jason Smith testified that he has prior convictions for drug offenses, auto theft, aggravated assault and receiving stolen property. He sold crack cocaine to appellant and Siller almost every day. Sometimes, appellant and/or Siller would go to Lucy's house where they would borrow money from her in order to purchase crack.
Smith further testified that on June 3, 1997, Smith went to Rose Crowder's. Appellant and Siller were there. Smith asked them if they would help him cash a check so they could all get high. At 9:00 p.m., Smith drove appellant and Siller over to Lucy's. Appellant and Siller went into Lucy's house, while Smith waited in the car. Appellant and Siller returned to the car with $30. The three men purchased and smoked crack.
Around 11:30 p.m., the men wanted more crack, and needed money. They returned to Lucy's house. Appellant and Siller went in the back door. Smith waited in the car for thirty to forty minutes. Then, Smith went into the house to see what was taking so long. Smith saw Siller rummaging through Lucy's possessions. Smith saw a box of blank checks in the rear bedroom and decided to take them. Smith walked into the dining room. He could see appellant in the front room shaking and hitting Lucy. Appellant screamed at Lucy, "Where is it at?" Smith decides not to take the blank checks. He left Lucy's house and continued to try to get drugs.
Kay Ann May of the trace evidence department testified that the blood found on Smith's clothing was Smith's blood, not Lucy's. Smith testified that he broke the glass on the door of his girlfriend's home and cut himself. The police testified that a glass window on the door of the girlfriend's home was broken.
Rose Crowder was a co-defendant in this case on charges of obstruction of justice. A Crim.R. 29 motion was granted in her favor at the close of the prosecution's case. The judge stated that Crowder was now available as a witness. Neither the defense nor the prosecution called Crowder to testify.
Ted Ramos, Lucy's neighbor across the street, testified that he knew appellant. Appellant was not a violent person.
Edward Farrell testified that he was in the cell next to Jason Smith. Smith told Farrell that he had beaten up an old lady. Smith said he did not have to worry about his partners snitching on him, because he acted alone. Farrell decided to tell the authorities about his conversation with Smith in order to get parole and also because he had an elderly mother. Jason Smith denied that he ever spoke with Farrell.
Brian Roberts testified that on the morning of June 4, 1997, Jason Smith called him and said he robbed $2,500 from someone. Roberts testified that nobody trusted Smith because he often ripped people off. Smith hit Roberts with a hammer. Roberts had smoked crack with appellant and Siller in the past. Siller would get money from Lucy and then they would go party. Roberts had been convicted of numerous offenses, including forgery, falsification and felonious assault on a police officer.
 I.
Appellant's first assignment of error states:
 THE DEFENDANT, WALTER ZIMMER, WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
To demonstrate ineffective assistance of counsel, appellant must show (1) that counsel substantially violated an essential duty, and (2) appellant was prejudiced by counsel's errors.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, State v. Bradley (1989), 42 Ohio St.3d 136. Deference is given to the strategic decisions of counsel. Id. Appellant has the burden to prove a reasonable probability that the result of the trial would have been different but for counsel's unprofessional errors. See Bradley, supra.
Appellant contends his counsel was ineffective for failure to request separate trials pursuant to Crim. R. 14. He asserts that the joint trial precluded the calling of co-defendant Rose Crowder. Crowder was acquitted and available to testify, so appellant was not prejudiced by the failure to request a trial separate from Rose.
Appellant did not show that counsel was ineffective for failing to call Rose Crowder. Decisions whether to call witnesses concern defense counsel's trial strategy, and are accorded deference. See State v. Coulter (1992), 75 Ohio App.3d 219, State v.Hunter (1984), 20 Ohio App.3d 310, 312. Appellant's counsel could have decided that Crowder was not credible or had damaging testimony to offer. Appellant has not demonstrated that the failure to call Crowder was not a reasonable strategic decision. Additionally, appellant has not demonstrated that Crowder's testimony would have changed the outcome of the trial.
Appellant contends the evidence against Siller prejudiced him. See Schaeffer v. United States (1960), 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d. 921. Specifically, numerous checks which the victim wrote to Siller were entered into evidence. Numerous checks the victim wrote to appellant were also entered into evidence. Appellant has not demonstrated that he was prejudiced by the evidence against Siller.
Appellant asserts that the charges were so numerous and the issues so complex that the jury would have a difficult time distinguishing between the evidence against appellant and Siller. SeeZafiro v. United States (1993), 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d. 317. The charges against appellant and Siller were identical. A severance of trial would not have resulted in any reduction in the volume of evidence or number of witnesses. Appellant has not shown a reasonable probability that the outcome would have been different had separate trials been granted.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second and third assignments of error will be considered out of order. Appellant's third assignment of error states:
 THE TRIAL COURT ERRED IN DENYING THE DEFENSE MOTION FOR ACQUITTAL VIA RULE 29.
A Crim.R. 29 motion is a challenge to the sufficiency of evidence. When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 520, State v. Jenks (1991), 61 Ohio St.3d 259.
A felonious assault occurs when a person knowingly causes serious physical harm to another. R.C. 2903.11. Jason Smith testified that he saw appellant shaking and hitting Lucy. The EMS personnel testified about the severe injuries sustained by Lucy. The evidence was sufficient to support the conviction for felonious assault.
The relevant elements of aggravated burglary are an offender by force, stealth or deception trespasses in an occupied structure where another person besides an accomplice is present, with purpose to commit any criminal offense and the offender inflicts physical harm on another. The police testified that the back door appeared forced open. According to Smith's testimony, appellant demanded money from Lucy and inflicted physical harm on her. The evidence was sufficient to support the aggravated burglary conviction.
The relevant elements of aggravated robbery are when the offender, while committing or attempting to commit a theft offense, inflicts serious physical harm on another. R.C. 2911.01. The evidence discussed above is sufficient to support a conviction for aggravated robbery.
The offense of attempted aggravated murder requires proof that: the offender purposefully engaged in conduct which, if successful, would have caused the death of another while committing or attempting to commit or while fleeing after committing or attempting to commit kidnaping, aggravated robbery or aggravated burglary. R.C. 2923.02, 2903.01. The fact that Lucy was left gagged and tightly bound to a chair in a semi-conscious state after being severely beaten was sufficient evidence to demonstrate a purpose to cause the death of another.
The relevant elements of kidnaping are when the offender forcefully restrains the liberty of another person to facilitate the commission of a felony or to inflict physical harm on that person. R.C. 2905.01. There was evidence that appellant and/or Siller, acting in concert, tied the victim to a chair for the purpose of robbing and beating her.
The evidence was sufficient to support all five counts of the conviction.
Accordingly, this assignment of error is overruled.
 III.
Appellant's second assignment of error states:
 WHETHER THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.
In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172, citing Tibbs v. Florida
(1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unreliable, certain or uncertain, conflicting, fragmentary; whether a witness was impeached and whether a witness had an interest in testifying. State v. Mattison
(1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. State v. DeHass (1967), 10 Ohio St.2d 230.
Appellant contends that the jury lost its way in finding Jason Smith's testimony credible. Smith gave two false statements to the police, saying he had no involvement with the crime. Smith was convicted of numerous crimes. Smith had a personal interest in testifying, because he had numerous charges against him dismissed in exchange for his testimony. Additionally, according to appellant, Smith was the one who actually assaulted Lucy. Another prisoner, Farrell, testified that Smith told him he beat up an old lady. Brian Roberts testified that no one trusted Smith, because he ripped people off. Roberts also said that Smith called him and said he had robbed $2,500 from someone.
On the other hand, there was considerable evidence to support Smith's testimony that appellant and Siller borrowed money from Lucy and used the money to buy crack. There were cashed checks, bank statements, and handwritten tallies of amounts owed. Roberts testified that Siller obtained money from Lucy and that Roberts, Siller and appellant smoked crack together. Neighbors testified that they saw appellant at Lucy's one morning at 1 a.m. The victim's blood was not found on Smith's clothing. Smith's testimony was consistent and certain.
The statement given by appellant to the police was incredible and contradicted the statement of Siller and Rose Crowder. It was suspicious that appellant and Siller did not call 911 from the victim's or Crowder's house. Appellant said he was going to use the dining room phone, but the police testified that phone had been ripped out of the wall. Also, appellant's written statement said he could see the victim's feet from the screen door, but other witnesses said the feet could not be seen until one was inside the house. The fact that appellant stayed in the house ten minutes and picked up various objects instead of going to get help for Lucy also engenders disbelief in appellant's story.
The jury could also find that appellant's witnesses, Farrell and Roberts were not credible. Both of these witnesses had prior criminal records. Farrell hoped to get paroled if he told the authorities about implicating statements made by Smith. Roberts may have had a vendetta against Smith because Smith hit him with a hammer. The jury had the opportunity to view Farrell, Roberts and Smith and determine who was credible. We can not say that the jurors clearly lost their way in determining that Smith's story was credible.
Accordingly, this assignment of error is overruled.
 IV.
Appellant's fourth assignment of error states:
 WHETHER THE TRIAL COURT ERRED IN NOT MERGING ALLIED OFFENSES OF SIMILAR IMPORT.
 This court has set forth a two-tiered test to determine whether two crimes with which a defendant is charged are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
State v. Blankenship (1988), 38 Ohio St.3d 116, 117. See also Statev. Williams (1996), 115 Ohio App.3d 24.
The elements of felonious assault and attempted murder correspond to such a degree that they are allied offenses of similar import. See Williams, supra at 36, State v. Box (1993),89 Ohio App.3d 614. Appellant committed the felonious assault and the attempted murder with separate animuses, however. Appellant committed felonious assault when he was beating Lucy for the purposes of obtaining money. Then, appellant committed attempted murder by beating the victim and leaving her gagged and tied to the chair. The victim was left in this condition so she would not be able to identify appellant or assist in his apprehension. Because appellant committed felonious assault and attempted murder with two different motives, appellant could be convicted and sentenced for both offenses.
Appellant contends that the kidnapping count should be merged either with the robbery, felonious assault or attempted murder. Appellant contends that the victim was tied to the chair only to facilitate these other offenses. Robbery and kidnapping are allied offenses unless (1) The restraint of movement was greater than that needed for the robbery, or (2) the victim was subjected to a substantial risk of harm from the kidnapping, aside from the harm of the robbery. See State v. Parker (1986, 31 Ohio App.3d 128.
Lucy was left tied up after the robbery was completed. The victim was subjected to a greater amount of harm by leaving her restrained in her injured state. Robbery and kidnapping were not allied offenses in this case.
The elements of kidnapping and attempted aggravated murder and felonious assault do not correspond to such a degree that they are allied offenses of similar import. See State v. Keenan (1997),81 Ohio St.3d 133; State v. Blankenship (1988), 38 Ohio St.3d 116. Commission of one does not result in commission of the other. SeeKeenan, Blankenship, supra. In this case, the kidnapping was completed when the victim was tied to the chair. See State v. Luff
(1993), 85 Ohio App.3d 785. Then, appellant committed attempted aggravated murder by severely beating the victim and leaving her tied in the chair and gagged. Kidnapping was not an allied offense with either the murder or the felonious assault charge.
 Accordingly, this assignment of error is overruled. The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendants conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SPELLACY, J. AND BLACKMON, J., CONCUR.
 _________________________________ ANN DYKE PRESIDING JUDGE