UNITED STATES

v.

**PEREZ, et al.**

**No. 3:02CR7(JBA).**

United States District Court, D. Connecticut.

Jan. 14, 2004.

Michael O. Sheehan, Richard A. Reeve, Sheehan & Reeve, New Haven, CT, Dan E. LaBelle, Halloran & Sage, Westport, CT, Noah Lipman, New York, NY, Joel H. Thompson, Shelley R. Sadin, Zeldes, Needle & Cooper, Bridgeport, CT, Robert M. Casale, Branford, CT, Auden Grogins, Fairfield, CT, Jeremiah F. Donovan, Old Saybrook, CT, for Defendants.

David A. Ring, John A. Danaher, III, U.S. Attorney's Office–HFD, Hartford, CT, Peter D. Markle, Shawn J. Chen, U.S. Attorney's Office–NH, New Haven, CT, for Plaintiff.

**Ruling on Defendant Fausto Gonzalez's Motion for Severance of Defendants [Doc. # 577] and Wilfredo Perez's Renewed Motion for Severance of Defendants [Doc. # 575]**

ARTERTON, District Judge.

Defendants Perez and Gonzalez seek to sever both the liability and the penalty phases of the trial. *See* Defendant Fausto Gonzalez's Motion for Severance of Defendants [Doc. # 577] and Wilfredo Perez's Renewed Motion for Severance of Defendants [Doc. # 575]. The Government opposes the severance of the liability phase, but does not oppose the severance of the penalty phase, provided that the defendants agree on the order of the penalty proceedings. For the reasons discussed below, defendants' motions for severance are GRANTED.

## I. Background

Defendants Wilfredo Perez and Fausto Gonzalez are charged in connection with the murder of Theodore Casiano with a violation of 18 U.S.C. § 1958 for Conspiracy to Commit Murder–for–Hire and Murder–for–Hire (interstate travel); a violation of 18 U.S.C. § 1959 (VICAR Murder); and a violation of 18 U.S.C. § 924(c) and (j) (Causing Death by Use of a Firearm During a Crime of Violence). Perez is also charged under 18 U.S.C. § 1958 with Murder–for–Hire (interstate facility). The Government seeks the death penalty against these defendants, and, in this respect, the Second Superceding Indictment also includes a Notice of Special Findings about the defendants' mental culpability and certain aggravating factors against them.

Wilfredo Perez and Fausto Gonzalez are two of five jointly indicted co-conspirators. This court previously severed the trial of Jose Antonio Perez and Raymond Pina, against whom the Government did not seek the death penalty, from the trial of the two capital defendants. The trial of Jose Antonio Perez and Raymond Pina took place from March 17, 2003 through April 14, 2003, when the jury returned its verdict, and many of the witnesses from this earlier trial are expected to testify at the trial of Wilfredo Perez and Fausto Gonzalez. As a result, in this case, the Court has insight into how a trial against Wilfredo Perez and Fausto Gonzalez will proceed at the liability phase, enabling it to make an informed determination about severance.

Defendants claim that severance of the liability phase is necessary in order to protect the trial rights of defendants, because (1) Perez will impeach Gonzalez as a hearsay declarant after certain out-of court statements by Gonzalez are introduced, and the impeachment would include otherwise inadmissible evidence such as Gonzalez's previous felony drug and grand larceny convictions, and evidence of his involvement in multiple car thefts (to show character for untruthfulness); (2) Perez will impeach the Government's cooperating witness Mario Lopez, an alleged co-conspirator, by introducing evidence of prior bad acts that Lopez committed with Gonzalez; (3) Perez will seek to paint Gonzalez as "the real villain" in this case, a person more worthy of conviction than Perez; and (4) examination of jurors' ability to properly weigh evidence against Gonzalez will prejudice Perez. The government opposes the motion to sever the liability phase, arguing that defendant Perez has no real need to impeach Gonzalez as a hearsay declarant because Gonzalez's out of court statements do not implicate Perez, and that the Court can accommodate Perez's trial rights without unfair prejudice to Gonzalez through measures less severe than severance.

## II. Standard

 Rule 14 of the Federal Rules of Criminal Procedure provides:

> If it appears that a defendant or the government is prejudiced by a joinder of ... defendants ... for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

"There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials ... promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Where joinder is proper, a Court "should grant a

severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. The decision to sever "is committed ... to the broad discretion of the trial judge." *United States v. Burke*, 700 F.2d 70, 83 (2d Cir.1983).

### III. Discussion

### A. Impeachment of Gonzalez as a Hearsay Declarant

■ In the previous trial of Jose Antonio Perez and Raymond Pina, the government elicited testimony from Mario Lopez about alleged statements of Fausto Gonzalez, which were offered as co-conspirator statements against both defendants in that case under Fed.R.Evid. 801(d)(2)(E). Specifically, Lopez testified to the following out of court statements by Gonzalez:

a. Lopez testified that Gonzalez approached him and "asked if he could use my motorcycle for a murder that he was hired to do." Tr. at 1274.

b. Lopez testified that he, along with Fausto Gonzalez and Shorty, were introduced by Ollie Berrios to "the owner" of Perez Auto. He stated that the owner asked Ollie "who was going to be doing the job, or something like that," and that "Mr. Gonzalez has a few words with him [the owner] at that time." When asked if he was part of that conversation, Lopez stated "I was able to overhear. I wasn't directly up front." Tr. at 1280. Lopez did not testify as to the substance of this conversation. During cross-examination, Lopez testified that "I heard partial the conversation that was done." Tr. at 1431. He also stated "I was in the office when the conversation began." Before the grand jury, however, Lopez had stated that he was not present during this conversation. Tr. at 1433.

c. Relating a conversation inside the car as Lopez, Pina, Berrios, Feliciano, and Gonzalez were "scouting the area" in which the planned murder was to occur, Lopez testified that Gonzalez "was asking more or less which way the gentleman [Casiano] was going to be entering and which will be the best way to get back on the highway to get back to New York." Tr. at 1288.

d. Lopez testified that on the morning before he left the Bronx to go to Connecticut, "Mr. Gonzalez told me that he wanted to use my motorcycle, and I came up to Connecticut to deliver the motorcycle that was going to be used in the murder." Tr. at 1293.

e. Lopez testified that after Pina did not show up at the El Cubano restaurant in the Bronx on the second day to join them in going to Connecticut to participate in the murder, "Mr. Gonzalez said he was going to try to call Raymond, see what happened, why he wasn't there." Tr. at 1294. When unable to locate Pina, Lopez testified that Gonzalez told him that "I was going to be the driver. I knew that I was going to be the driver for the murder of Teddy Casiano." Tr. at 1296.

f. Lopez testified that when driving back to New York, he asked the others in the car about the motive for the killing, and that "I can't recall which individual [responded], whether it was Ollie or Fat Jay who answered my question." Tr. at 1301. Lopez said that the speaker responded that "[h]e was being killed because he was attempting to extort the owner for more money." *Id.* Mr. Gonzalez was present in the car when the motive was being discussed.

g. Lopez testified that on the second day in Connecticut, he, along with Gonzalez went back to the office at Perez Auto,

where he discussed where the murder would take place with Gonzalez and the "owner." Lopez did not testify about any specific statements that Gonzalez made at this time, but says generally that the substance of the conversation [without naming the speaker] was that "If the victim arrived-if the victim left the business and took a left or a right, you know, like where we were going to do it at, you know." At this time the "owner" said "he just didn't want it done in front of his business and all that." Tr. at 1304

h. Santiago Feliciano, another alleged co-conspirator who is cooperating with the government, testified at the previous trial to the following: "Well, one day I was hanging out at the pizza shop and I met up with Fausto, and Fausto, I told him somebody up in Connecticut wanted somebody to be killed, and he told me, he told me, 'When?' ". Feliciano stated that he understood to mean that Gonzalez "was willing to do it." Tr. at 2115.

i. Feliciano also testified that Fausto Gonzalez tried to find Raymond Pina, or "Shorty", before returning to Connecticut on the second day to complete the murder, but was unable to find him. According to Feliciano, Gonzalez then stated: "F* *k it, leave him, more money for us." Tr. at 2134.

Under Rule 806, "[w]hen a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." Perez thus is entitled under Rule 806 to impeach Gonzalez's hearsay statements by introducing evidence of his prior felony convictions pursuant to Fed.R.Evid. 609. As Perez argues, a joint trial in such circumstances raises an impossible dilemma—"either Mr. Gonzalez's right to a fair trial is prejudiced because the jury hears otherwise impermissible and unfairly prejudicial evidence against him, or Mr. Perez's rights are compromised because of his inability to fully challenge the credibility of the declarant of those alleged statements." Memorandum in Support of Renewed Motion for Severance of Defendants [Doc. # 576] at 5.

The Government's argument that Perez's "need" to impeach Gonzalez is overstated, because none of the earlier co-conspirator testimony included a statement by Gonzalez that implicated Wilfredo Perez, is well-taken. Indeed, it should be noted that the dilemma posed by Perez is considerably weaker than that which existed in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Richardson,* 481 U.S. at 202, 107 S.Ct. 1702, where the Supreme Court considered whether severance was required when a co-defendant's out-of-court confession implicated the defendant. *Bruton* found a defendant's Sixth Amendment Confrontation Clause rights violated if a nontestifying co-defendant's confession named the defendant, *see Bruton,* 391 U.S. at 135–36, 88 S.Ct. 1620, and *Richardson* found these rights violated if the out-of-court confession otherwise linked the defendant to the crime, even if the confession was redacted to omit the defendant's name. *See Richardson,* 481 U.S. at 202, 107 S.Ct. 1702. Unlike the co-conspirator's statements in *Bruton* and *Richardson,* Gonzalez's statements do not implicate Perez. However, since these statements are offered in part to prove the existence of the charged conspiracy, restricting Perez's ability to impeach Gonzalez, as is his right under Fed. R.Evid. 806 and 609, would "compromise a specific trial right" of Perez to fully challenge the Government's evidence against him in all respects. *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

While the Court agrees with the Government that "Gonzalez's out-of-court statements have little or no probative value in establishing Perez's participation in the murder," United States' Resp. [Doc. # 598] at 7, Gonzalez's hearsay statements are critical in establishing the existence of a conspiracy. As Perez correctly contends, the existence of a conspiracy, and that acts were carried out in furtherance of the conspiracy, are essential elements of the offense charged against him that the Government must prove at trial. It is his right to challenge the Government's evidence on these matters, and it is not the province of the Court to second guess this defense strategy. As a result, the Court finds that the inability of Perez to impeach Gonzalez's statements by use of Gonzalez's prior record at a minimum, may unfairly limit Perez's defense.

**B. Impeachment of Lopez by Introduction of Evidence of Prior Bad Acts Committed with Gonzalez:**

The defendants also argue that Perez will need to impeach Mario Lopez's testimony by cross-examining him about his prior criminal activity in conjunction with Fausto Gonzalez. At the previous trial of Jose Antonio Perez and Raymond Pina, Lopez testified on cross examination to a number of previous criminal acts which he committed with Gonzalez, including the following:

a. Lopez acknowledged that there might be a tape recorded conversation involving Lopez, Gonzalez, and "a fellow named King," "discussing the shooting of this fellow Fats." Tr. at 1345. He agreed with the cross-examiner that Dargan and King asked him to reach out for Gonzalez because Gonzalez has "committed so many murders that they probably cannot be counted on the fingers of your hands". Tr. at 1351.

b. Lopez testified that he and Gonzalez carjacked a Porsche in Greenwich. Tr. at 1359–60. Lopez testified that he handcuffed and placed a man in a van when steeling his Porsche, while Gonzalez pointed a gun at the man. Tr. at 1405.

c. Lopez testified that he and Gonzalez carjacked a black Mercedes Benz 500 on Park Avenue in Manhattan. Tr. at 1360–61.

d. Lopez testified that he and Gonzalez robbed a store called All Start Power Sports in New York. Tr. at 1406.

e. Lopez testified to an incident in which he and Gonzalez stole a Mercedes, in which Gonzalez pointed his gun at the man inside the car and ordered him to leave, and as Gonzalez was driving the Mercedes away, he flipped the car over. Tr. at 1411–1413

f. Lopez testified to an incident on Liden Boulevard in Queens in which he and Gonzalez, on a motorcycle, pulled up beside another motorcycle, and Gonzalez pulled out a gun, ordered the person off the motorcycle, and stole it. Tr. at 1415.

The defendants argue that they will need to introduce these statements to highlight Mr. Lopez's discrepancies in statements to authorities, as Lopez at first omitted any statements implicating himself and Gonzalez in these crimes in interviews with authorities. While for the most part, Perez can effectively impeach Lopez by focusing this line of questioning on Lopez's own involvement in these activities, without asking specifically about Gonzalez's involvement in these crimes, in one respect, Gonzalez's identity will not so easily be disguised. Specifically, Perez intends to impeach Lopez based on Lopez's alleged discrepancy in statements to police about the murder of Alexander Pierce of Houston Street in New York in 1998. As Perez notes, Lopez became a government in-

former in 1998, and at that time claimed that Raymond Pina was responsible for the shooting. Later, however, Lopez told police that Gonzalez was the shooter. Perez now wishes to use this information to "show the partial and selective quality of Lopez's 'cooperation' [with police]," and thus "show that Lopez embarked on a career as a cooperator in 1998, implicating Pina but not Gonzalez in criminal activities, activities in which he himself was involved." Memorandum in Support of Renewed Motion for Severance of Defendants [Doc. # 576] at 9. Thus, to the extent that Perez wishes to explore the nature of Lopez's self-serving cooperation with the police by arguing that Lopez falsely identified Pina so that Lopez could continue to engage in criminal activity with Gonzalez, Lopez will be asked to identify Gonzalez in some manner-if not by name, then, at minimum, by an identifier such as "partner." Even if Gonzalez is left unnamed, a jury, having heard Lopez's testimony about his and Gonzalez's criminal endeavors in this case, may infer from questioning that Gonzalez is the unnamed person engaged in other criminal activity with Lopez, and therefore the person responsible for this uncharged 1998 murder.

Moreover, the risk remains that Lopez will explicitly implicate Gonzalez. Lopez, a relatively unschooled witness, who is cooperating with the Government in a deal that has spared him the death penalty, will be repeatedly asked in the context of an intense, aggressive cross-examination about his involvement in uncharged crimes committed with Gonzalez, his longstanding partner. In this context, it is not an imagined risk that he may inadvertently reveal his involvement with Gonzalez, even if not directly asked. An instruction of the Court to the witness to avoid mentioning Gonzalez's name, will diminish, but not remove, this risk.

In sum, the risk of prejudice to one of the defendants would pervade a joint trial. Further, given the heightened need for reliability in a death penalty trial, the Court finds that in this capital case, a risk of prejudice results from the pursuit of reliability, that cannot be managed by measures less severe than severance. Considerations of the expenditure of judicial resources do not change the severance calculus. Whenever the death penalty is at issue, significant judicial and governmental resources are expended, as they must be, before trial ever begins, on a myriad of pre-trial issues and jury selection issues. In this context, having two trials instead of one is an incremental burden on the Court and Government, but is not an inordinate burden. Lastly, given the distinct and different roles these defendants are alleged to have played, the risk of unseemly, inconsistent verdicts is insubstantial.

## IV. Conclusion

For the foregoing reasons, Defendant Fausto Gonzalez's Motion for Severance of Defendants [Doc. # 577] and Wilfredo Perez's Renewed Motion for Severance of Defendants [Doc. # 575] are hereby GRANTED.

IT IS SO ORDERED.