**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2799
_____

UNITED STATES OF AMERICA

v.

CLAUDELLE MCMAHILL,
                                   Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2:06-cr-00216-005)
District Judge: Hon. Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
October 26, 2011

Before:  FISHER, VANASKIE and ROTH *Circuit Judges*

(Filed: December 29, 2011)

_____

OPINION
_____

1

VANASKIE, *Circuit Judge*.

Claudele McMahill[1] appeals her conviction and sentence for mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 371. For the reasons set forth below, we will affirm.[2]

I.

Because we write primarily for the parties, we assume familiarity with the case and discuss only those facts necessary to our decision. In 2003, Claudele McMahill and Lacy Tilley were romantically involved. At that time, Tilley was vice president of Penn Window Cleaning, a company owned by Steve Gaber. In January 2004, McMahill began working at Acme Building Service, a janitorial services company which Gaber also owned. McMahill was hired to work on increasing the company's sales as well as to prepare the company for its eventual sale to Tilley. In April 2004, Tilley purchased Acme's assets, and with Acme's former clients and personnel, continued Acme's business operation under a new company name – United Building Maintenance ("UBM").

Following the purchase, Tilley informed his employees that UBM could not afford to continue to pay them the salaries they made with Acme. Tilley told them that if they wanted to continue working for UBM, they would have to file for unemployment compensation, and that UBM would then pay them "under the table" to cover the

---

[1] Although the case caption as docketed indicates that McMahill's first name is "Claudelle," McMahill spells her name "Claudele."

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

difference between the unemployment benefits they received and what they had earned working for Acme. McMahill, along with several other former Acme employees, participated in the scheme and, while working for UBM, fraudulently claimed and received unemployment benefits.

McMahill and Tilley were ultimately jointly indicted and tried in the Western District of Pennsylvania on several counts of mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 371. The jury found McMahill and Tilley guilty on all charged counts. McMahill was sentenced to a prison term of 20 months.

McMahill raises two challenges on appeal. First, she claims that the District Court abused its discretion in denying her motion to sever. Second, she argues that the District Court erred in enhancing her offense level for obstruction of justice pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1. We find both claims to be without merit.

## II.

### A. Motion for Severance

At trial, McMahill and Tilley were separately represented by counsel, until Tilley, after the close of the government's case, decided he wanted to proceed pro se. McMahill's counsel subsequently moved to sever his client's case from Tilley's pursuant to Federal Rule of Criminal Procedure 14, arguing that Tilley's self-representation was unfairly prejudicing McMahill. The District Court disagreed that severance was warranted and denied the motion. McMahill argues that the District Court erred in denying the motion for severance.

3

Rule 14(a) permits a court to sever defendants' trials where consolidation "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). We have recognized that severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). A defendant seeking to sever "bear[s] a heavy burden and must demonstrate not only abuse of discretion in denying severance, but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." *Id.* (citations and internal quotation marks omitted).

McMahill asserts that Tilley's "testimony and closing argument could not have been more disastrous for [her]." (McMahill's Br. at 14.) McMahill appears to argue that she was tainted by Tilley's general demeanor at trial. She accuses Tilley of being an evasive and paranoid witness, and also cites his expression of contempt for the federal government and his remarks that a number of individuals, including McMahill's ex-husband, Gaber, and the prosecutor, were trying to cause trouble for Tilley.

To the extent such allegedly prejudicial conduct or statements occurred during Tilley's testimony, it is not at all clear that they bear any relation to the decision to proceed pro se, which was the purported basis of McMahill's motion for severance. Moreover, we think that any taint that may have arisen as a result of the jury's perception of Tilley's demeanor or character would have prejudiced only Tilley himself, and could not reasonably have affected the jury's view of McMahill or her guilt, especially in light

4

of the District Court's specific instruction to the jury that "the personalities and the conduct of counsel, and here I might add, Mr. Tilley, when he was acting as his own counsel, are not in any way an issue." (A. 2157.)

McMahill further asserts that she was prejudiced by Tilley's specific testimony concerning her. She states that Tilley was "evasive [on cross-examination] as to [McMahill's] role at UBM, denying that she was an employee while simultaneously claiming that she worked there." (McMahill's Br. at 7.) Tilley's testimony was not evasive – it was simply his and McMahill's version of events, i.e., McMahill worked for UBM, but was not receiving remuneration for any of her services. And, if his articulation of McMahill's own defense was evasive, the record makes clear that it was not any more evasive than her own testimony on the issue.

McMahill also asserts that she was prejudiced by Tilley's testimony that following his decision to purchase Acme, he sent McMahill there to act "sort of as a spy" for him. (A. 1323.) McMahill does not explain why she believes Tilley's reference to her as his "spy" at Acme would be so damaging, and we are unable to agree that it would have caused her any prejudice. McMahill further complains that Tilley's testimony "identified her as a corporate officer" and that he introduced a UBM organizational chart that referenced McMahill. We cannot agree that this testimony prejudiced McMahill in view of the other substantial evidence, including McMahill's own testimony, that McMahill worked for UBM while she claimed and collected unemployment benefits. Furthermore, the specific allegation of prejudice here is completely undercut by the fact that McMahill herself testified that she held herself out to be vice president of UBM. While Tilley's

5

"identification" of McMahill as a corporate officer may have been unfavorable to McMahill's defense that she was not working for UBM, it was certainly not more unfavorable than McMahill's own admission that she held herself out to be UBM's vice president.

McMahill also claims that she was prejudiced when Tilley "opened the door" to evidence concerning his involvement in an unrelated embezzlement scheme for which Tilley was also under indictment. The prosecutor's questioning, however, did not implicate McMahill in the alleged embezzlement scheme and the District Court specifically instructed the jury that, to the extent Tilley denied engaging in any embezzlement, there was no evidence in the trial that Tilley committed embezzlement. Even if we assume that the jury impermissibly construed the government's line of questioning as evidence that Tilley committed embezzlement, the District Court instructed the jury to compartmentalize the evidence as to each defendant, and there is no reason to think that the jury would not have been able to follow that instruction.

In sum, McMahill has not met her burden to show that the denial of severance caused "clear and substantial prejudice resulting in a manifestly unfair trial." *Urban*, 404 F.3d at 775 (internal quotation marks omitted). Accordingly, we must reject her claim for relief.

B. Obstruction of Justice Sentence Enhancement

In its pre-sentence investigation report, the Probation Office calculated McMahill's total offense level to be 13, which, with her criminal history category of I, resulted in an advisory guideline range of 12 to 18 months' imprisonment. The

government objected to the Probation Office's offense-level calculation on the ground that the office had not applied an "obstruction of justice" enhancement pursuant to U.S.S.G. § 3C1.1. The District Court ruled that a two-level obstruction of justice enhancement was appropriate, finding that McMahill perjured herself in testifying that the checks she received from UBM during the time the government contended that she worked for the company while fraudulently receiving unemployment compensation constituted either the repayment of money she had loaned to Tilley or expense reimbursements. The two-level enhancement resulted in an increased guideline range of 18 to 24 months. The District Court sentenced McMahill to 20 months' imprisonment and 3 years' post-release supervision.

We have explained that "to trigger application of § 3C1.1 on perjury grounds, a defendant must give 'false testimony concerning a material matter with the willful intent to provide false testimony.'" *United States v. Miller*, 527 F.3d 54, 75 (3d Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). The District Court concluded that McMahill's testimony was false in light of the absence of credible evidence substantiating the existence of any loan from her to Tilley, as well as the extensive evidence demonstrating that McMahill was in fact working for UBM during the period she collected unemployment insurance. The District Court further found the testimony to be material, in that the testimony, if credited, bolstered McMahill's defense that she was not being paid for her services at UBM. Lastly, the District Court found that McMahill gave the testimony with the willful intent to provide false testimony, noting that it was not the type of testimony that could be given as a result of confusion or

mistake. *See Dunnigan*, 507 U.S. at 94-95 (distinguishing perjured testimony from false testimony given as a result of "confusion, mistake, or faulty memory.")

McMahill argues that the District Court erred in applying the two-level obstruction of justice enhancement because "[t]here was no evidence introduced that [the] cash loan never occurred." (McMahill's Br. at 16.) We review a district court's determination that a defendant committed perjury for clear error. *See United States v. Cusumano*, 943 F.2d 305, 315 (3d Cir. 1991). We will not reverse the court's determination unless we are "left with the definite and firm conviction that a mistake has been committed." *See United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (internal quotation mark omitted).

It is well-established that the facts underlying a sentencing enhancement, including an enhancement for the obstruction of justice, must be proven by a preponderance of the evidence. *See United States v. Johnson*, 302 F.3d 139, 154 (3d Cir. 2002); *United States v. Belletiere*, 971 F.2d 961, 965 (3d Cir. 1992). In this case, there was ample evidence that McMahill was a compensated employee of UBM while receiving unemployment compensation benefits. The absence of evidence that she had not loaned cash to Tilley did not preclude the District Court from disbelieving McMahill. Accordingly, the District Court did not clearly err in finding that McMahill committed perjury when she testified that the payments she received from the company were either loan repayments or expense reimbursements.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.